IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF NORTH CAROLINA
WESTERN DIVISION

NO. 5:14-CV-729-FL

| | | |
|---|---|---|
| TMM DATA, LLC, | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| v. | ) | ORDER |
| | ) | |
| ASHISH BRAGANZA, | ) | |
| | ) | |
| Defendant. | ) | |

This matter is before the court on defendant's motion to dismiss pursuant to Federal Rules

of Civil Procedure 12(b)(1), 12(b)(6), and 12(b)(7). (DE 19). The issues raised have been fully

briefed and are ripe for adjudication. For the following reasons, the court grants in part and denies

in part defendant's motion to dismiss.

## STATEMENT OF THE CASE

Plaintiff, a Pennsylvania limited liability company, filed this action on October 28, 2014,

alleging common law claims for tortious interference with contractual relations and slander, as well

as a statutory claim for violation of North Carolina's Unfair and Deceptive Trade Practices Act

("UDTPA"), N.C. Gen.Stat. § 75–1.1, *et seq.* Plaintiff seeks compensatory damages, punitive

damages, and injunctive relief. Plaintiff's claims arise out of defendant's alleged disruption of

plaintiff's business relationship with Numeric Analytics ("Numeric"), a third party to this action.

Defendant filed the instant motion on February 6, 2015, primarily arguing that plaintiff has

not suffered any damages. As a result, defendant argues, the court lacks subject matter jurisdiction

to hear this suit and plaintiff's claims fail as a matter of law. In support of his motion, defendant

submits a declaration of Jim Sunderhauf ("Sunderhauf"), Numeric's co-owner. (DE 20–1). In opposition to defendant's motion, plaintiff submits a declaration of Chris Walsh ("Walsh"), plaintiff's co-founder. (DE 22–1).

## STATEMENT OF FACTS

Plaintiff markets and sells its own data management software platform. (Compl., DE 1, ¶9). On March 9, 2012, Plaintiff contracted to license its platform and other services to Lenovo, Inc. ("Lenovo"). (Id. ¶10). Defendant is a Lenovo employee, and served as the main point of contact between Lenovo and plaintiff. (Id. ¶11).

On July 1, 2014, plaintiff and Lenovo mutually terminated their contractual relationship. (Id. ¶ 12). That same day, plaintiff entered into a contractual relationship with Numeric whereby the two jointly would provide services to consumers in a wide array of industries. (Id. ¶ 13).

Sometime between then and early October 2014, defendant contacted Sunderhauf to encourage Numeric to sever its relationship with plaintiff. (See Id. ¶¶ 14-17). Plaintiff grounds its claims in the content of this conversation. (Id.). In particular, defendant stated the following to Sunderhauf:

> (1) Plaintiff had stolen $300,000 from Lenovo, (2) Plaintiff did not perform services under its contract with Lenovo, (3) Plaintiff's technology was owned by Lenovo and had been stolen from Lenovo, (4) Plaintiff's data management software platform did not work as advertised, (5) Mr. Walsh was a 'con man' who was not to be trusted, and (6) Lenovo was currently suing Plaintiff over these issues.

(Id. ¶ 15). As a result of defendant's actions, Numeric has threatened to sever its relationship with plaintiff. (Id. ¶ 19).

2

**DISCUSSION**

A.      Standard of Review

        1. Rule 12(b)(1)

        A Rule 12(b)(1) motion challenges the court's subject matter jurisdiction, and the plaintiff

bears the burden of showing that federal jurisdiction is appropriate when challenged by the

defendant.  McNutt v. Gen. Motors Acceptance Corp., 298 U.S. 178, 189 (1936); Adams v. Bain,

697 F.2d 1213, 1219 (4th Cir. 1982).  A district court may address lack of subject matter jurisdiction

in two ways: the court may find insufficient allegations in the pleadings, viewing the alleged facts

in the light most favorable to the plaintiff, or the court may weigh the evidence in determining

whether the facts support the jurisdictional allegations.  Lovern v. Edwards, 190 F.3d 648, 654 (4th

Cir.1999).  Under the former analysis, "all the facts alleged in the complaint are assumed to be true

and the plaintiff, in effect, is afforded the same procedural protection as he would receive under a

Rule 12(b)(6) consideration."  Adams, 697 F.2d at 1219.

        Under the second analysis, a court may "go beyond the allegations of the complaint and in

an evidentiary hearing determine if there are facts to support the jurisdictional allegations" without

converting the matter to summary judgment.  Adams, 697 F.2d at 1219; Kerns v. United States, 585

F.3d 187, 192 (4th Cir. 2009).  "Where the jurisdictional facts are intertwined with the facts central

to the merits of the dispute . . . the entire factual dispute is appropriately resolved only by a

proceeding on the merits," and Rule 12(b)(1) is "an inappropriate basis" to grant dismissal.  Adams,

697 F.2d at 1219–20.  Rather, the court "should ordinarily assume jurisdiction" and "resolve

relevant factual disputes only after appropriate discovery, unless the jurisdictional allegations are

clearly immaterial or wholly unsubstantial and frivolous."  Kerns, 585 F.3d at 193.

2. Rule 12(b)(6)

A motion to dismiss under Rule 12(b)(6) tests the legal sufficiency of the complaint but "does not resolve contests surrounding the facts, the merits of a claim, or the applicability of defenses." Republican Party v. Martin, 980 F.2d 943, 952 (4th Cir.1992); see also Edwards v. City of Goldsboro, 178 F.3d 231, 243–44 (4th Cir. 1999). A complaint states a claim if it contains "sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" Ashcroft v. Iqbal, 556 U.S. 662, 678 (2009) (quoting Bell Atl. Corp. v. Twombly, 550 U.S. 544, 570 (2007)). "Asking for plausible grounds . . . does not impose a probability requirement at the pleading stage; it simply calls for enough fact to raise a reasonable expectation that discovery will reveal [the] evidence" required to prove the claim. Twombly, 550 U.S. at 556.

Furthermore, the complaint need not set forth "detailed factual allegations," but instead must simply "plead sufficient facts to allow a court, drawing on 'judicial experience and common sense,' to infer 'more than the mere possibility of misconduct.'" Nemet Chevrolet, Ltd. v. Consumeraffairs.com, Inc., 591 F.3d 250, 256 (4th Cir. 2009) (quoting Iqbal, 556 U.S. at 679). In evaluating the complaint, "[the] court accepts all well-pled facts as true and construes these facts in the light most favorable to the plaintiff," but does not consider "legal conclusions, elements of a cause of action, . . . bare assertions devoid of further factual enhancement[,] . . . unwarranted inferences, unreasonable conclusions, or arguments." Id. at 255 (citations omitted).

3. Rule 12(b)(7)

For a motion to dismiss pursuant to Rule 12(b)(7), courts must first determine whether the party to be joined is required pursuant to Rule 19(a). A party is required if:

> (A) in that person's absence, the court cannot accord complete relief among existing parties; or (B) that person claims an interest relating to the subject of the action and is so situated that

4

disposing the action in the person's absence may (i) as a practical matter impair or impede the person's ability to protect the interest; or (ii) leave an existing party subject to a substantial risk of incurring double, multiple, or otherwise inconsistent obligations because of the interest.

Fed. R. Civ. Pro. 19(a). If the court determines that the party is required, that party will be joined into the action. However, "[w]hen a party cannot be joined because its joinder destroys diversity, the court must determine whether the proceeding can continue in its absence, or whether it is indispensable pursuant to Rule 19(b) and the action must be dismissed." Owens-Illinois, Inc., 186 F.3d 435, 440 (4th Cir. 1999). Therefore, to prevail on a 12(b)(7) motion, a defendant must satisfy the requirements of both Rule19(a) and Rule 19(b).

B.      Subject Matter Jurisdiction

This court has subject matter jurisdiction where the parties have diverse citizenship and the amount in controversy exceeds $75,000, exclusive of interests and costs. 28 U.S.C. § 1322(a). The parties do not dispute that they have diverse citizenship. However, defendant argues that the court lacks subject matter jurisdiction because the amount in controversy does not exceed $75,000.

Typically, "the sum claimed by the plaintiff controls" the amount in controversy determination. St. Paul Mercury Indem. Co. v. Red Cab Co., 303 U.S. 283, 288 (1938). If a plaintiff claims an amount in good faith, a federal court will not dismiss on such grounds unless "it is apparent, to a legal certainty, that the plaintiff cannot recover [that] amount." Id. at 289. Defendants seeking 12(b)(1) dismissal on these grounds must therefore "show 'the legal impossibility of recovery' to be 'so certain as virtually to negative the plaintiff's good faith in asserting the claim.'" JTH Tax Inc. v. Frashier, 624 F.3d 635, 638 (4th Cir. 2012) (quoting Wiggins v. N. Am. Equitable Life Assurance Co., 644 F.2d 1014, 1017 (4th Cir. 1981)).

Here, plaintiff claims an amount "in excess of $75,000" under each of its claims. (Compl. ¶24, 33, 42). Further, Walsh's declaration suggests that plaintiff's damages surpass $100,000. (DE 22–1). Defendant argues in various ways that Walsh's declaration is factually insufficient, but such arguments concern the underlying merits of the dispute and are "an inappropriate basis" on which to grant dismissal. See Adams, 697 F.2d at 1219-20. In light of these facts, the court cannot say that it is legally impossible for plaintiff to recover "in excess of $75,000," and defendant's motion to dismiss for lack of subject matter jurisdiction must be denied.

C.     Failure to State a Claim

Defendant also argues that each of plaintiff's claims should be dismissed for failure to state a claim upon which relief can be granted.  The court will address each claim in turn.

1. Tortious Interference with Contractual Relations

Plaintiff asserts a claim for tortious interference with contractual relations against defendant. Defendant argues that plaintiff has not alleged that Numeric terminated its contract with plaintiff. Plaintiff counters that defendant encouraged Numeric to sever its relationship with plaintiff, and that Numeric threatened to do so as a result.

Under North Carolina law, tortious interference with contractual relations has the following elements:

> (1) a valid contract between the plaintiff and a third person which confers upon the plaintiff a contractual right against a third person; (2) the defendant knows of the contract; (3) the defendant intentionally induces the third person not to perform the contract; (4) and in doing so acts without justification; (5) resulting in actual damage to the plaintiff.

United Labs., Inc. v. Kuykendall, 322 N.C. 643, 661 (1988).  "To satisfy [the third element], the third person need not actually breach the contract." English Boiler & Tube, Inc. v. W.C. Rouse & Son, Inc., No. 97-2397, 1999 WL 89125, at *5 n.12 (4th Cir. 1999) (citing Lexington Homes, Inc.

v. W.E. Tyson Builders, Inc., 75 N.C.App. 404, 411 (1985)).  Rather, it is sufficient for plaintiff to show that defendant interfered with plaintiff's contract rights.  See Lexington Homes, Inc. v. W.E. Tyson Builders, Inc., 75 N.C.App. 404, 411 (1985) (finding tortious interference where third person delayed performance but did not breach their contract).

Here, plaintiff fails to state a claim for tortious interference because it fails to allege that defendant interfered with plaintiff's contract rights.  Plaintiff alleges that it "entered into a business and contractual relationship" with Numeric (Compl. ¶13), defendant slandered plaintiff and encouraged Numeric to sever this relationship (Compl. ¶15, 17), and Numeric "threatened to end its business relationship with Plaintiff as a result" (Compl. ¶19).  However, plaintiff does not allege that Numeric breached its contract with plaintiff, delayed performance, or otherwise failed to perform their contract in any way.  Therefore, the allegations of the complaint do not support a finding that defendant induced Numeric to not perform their contract, and plaintiff's tortious interference claim must be dismissed without prejudice.

2. Slander Claim

Plaintiff contends that defendant's statements to Sunderhauf constitute slander *per se*.  To plead a claim for slander *per se*, a complaint must allege that: (1) defendant spoke base or defamatory words which tended to prejudice plaintiff in his reputation, office, trade, business, or means of livelihood or hold him up to disgrace, ridicule, or contempt; (2) the statement was false; and (3) the statement was published or communicated to and understood by a third person.  See West v. King's Dept. Store, Inc., 321 N.C. 698, 703 (1988).  "Slander per se is an oral communication to a third party which amounts to (1) an accusation that the plaintiff committed a crime involving moral turpitude; (2) an allegation that impeaches the plaintiff in his trade, business, or profession; or (3)

7

an imputation that the plaintiff has a loathsome disease." Boyce & Isley, PLLC v. Cooper, 153 N.C.App. 25, 29-30 (2002).

For slander *per se*, "malice and damages are presumed as a matter of law." Cummings v. Lumbee Tribe of North Carolina, 590 F. Supp.2d 769, 774 (E.D.N.C. 2008) (citing Donovan v. Fiumara, 114 N.C.App. 524, 527 (1994)); see Badame v. Lampke, 242 N.C. 755, 756 (1955) (stating that slander *per se* "entitl[es] the victim . . . to recover damages, nominal at least, without specific proof of injury and damage").

By contrast, "[w]hen the [slanderous] character of the words does not appear on their face, but only in connection with extrinsic, explanatory facts, they are only actionable as . . . [slander] *per quod*." Id. "When stating a claim for [slander] *per quod*, a plaintiff must plead and prove special damages and malice, in addition to the aforementioned elements of a claim for [slander] *per se*." Id. "In the context of an action for [slander], special damages means 'pecuniary loss.'" Donovan, 114 N.C.App. at 527 (quoting Williams v. Rutherford Freight Lines, Inc., 10 N.C.App. 384, 387 (1971)).

As noted above, plaintiff alleges that defendant made the following statements:

(1) Plaintiff had stolen $300,000 from Lenovo, (2) Plaintiff did not perform services under its contract with Lenovo, (3) Plaintiff's technology was owned by Lenovo and had been stolen from Lenovo, (4) Plaintiff's data management software platform did not work as advertised, (5) Mr. Walsh was a 'con man' who was not to be trusted, and (6) Lenovo was currently suing Plaintiff over these issues.

(Compl. ¶15).

First, defendant argues that the complaint's allegations are not adequately specific to state a claim for slander. In particular, he contends that the complaint lacks information about the context in which the statements were made. However, unlike fraud claims, there is no heightened pleading

8

standard for slander.[1]  See Exclaim Mktg. v. DIRECTV, Inc., No. 5:11–CV–00684–FL, 2012 WL

3023429, at *8 (E.D.N.C. July 24, 2012) (citing Market Choice, Inc. v. New England Coffee Co.,

No. 5:08–CV–90, 2009 WL 2590651, at *5 (W.D.N.C. Aug. 18, 2009) ("[N]either the Federal Rules

of Civil Procedure nor the Fourth Circuit impose a special or heightened pleading standard for

defamation")); see also Wuchenich v. Shenandoah Mem'l Hosp., No. 99–1273, 2000 WL 665633,

at *14 (4th Cir. May 22, 2000); Elina Adoption Servs. Inc. v. Carolina Adoption Servs., Inc., No.

1:07–CV–169, 2008 WL 4005738, at *13 (M.D.N.C. Aug. 25, 2008).  Here, the complaint alleges

specific statements made by defendant to Sunderhauf.  Accordingly, the complaint is sufficient to

state a claim for slander under rule 8(a).

Next, defendant argues that the alleged slanderous statements are only actionable *per quod*,

rather than *per se*.  Defendant's statements that plaintiff stole $300,000 from Lenovo and that

plaintiff's technology had been stolen from Lenovo, however, accuse plaintiff of "committ[ing] a

crime involving moral turpitude."  Boyce, 153 N.C.App. at 29-30; see also Jones v. Brinkley, 174

N.C. 23 (1917) ("To charge one with larceny is to charge him with an offense involving moral

turpitude").  Thus, such accusations state a claim for slander *per se*.

As alleged, defendant's other statements are only actionable *per quod.*  Defendant's

statement that Walsh is a 'con man' who is not to be trusted is not actionable *per se* because

accusations of dishonesty or untruthfulness are not actionable *per se*.  Stutts v. Duke Power Co., 47

N.C.App. 76, 82 (1980).  Although plaintiff suggests that calling Walsh a 'con man' could imply

---

[1]  Defendant cites authority applying North Carolina pleading law.  North Carolina does have a heightened pleading standard for slander claims.  See Elina Adoption Servs. Inc. v. Carolina Adoption Servs., Inc., No. 1:07–CV–169, 2008 WL 4005738, at *5 (M.D.N.C. Aug. 25, 2008); see also Morrow v. Kings Dept. Stores, Inc., 57 N.C.App. 13, 21 (1982). However, federal courts sitting in diversity apply federal procedural law.  See, e.g., Hanna v. Plumer, 380 U.S. 460 (1965).

9

commission of deceitful acts, such implication is insufficient to state a claim for slander *per se*. See Williams v. Rutherford Freight Lines, Inc., 10 N.C.App. 384, 388-89 (1971) (calling union representatives 'gangsters' was not actionable *per se* because it was a "general reflection upon plaintiff's character or qualities" that "[did] not charg[e] them with a specific crime for which they could be indicted and punished"). Defendant's statement that Lenovo was currently suing plaintiff is not actionable *per se* because "anyone can 'file' any lawsuit, although the merits of those lawsuits are a different issue." Nucor Corp. v. Prudential Equity Group, LLC, 189 N.C.App. 731, 737 (2008). Finally, defendant's statements that plaintiff did not perform services under its contract with Lenovo and that plaintiff's data management software platform did not work as advertised are not actionable *per se* because their slanderous character appears "only in connection with extrinsic, explanatory facts." See Cummings, 590 F. Supp.2d at 774 (citation omitted). Neither statement is slanderous on its face because there might be reasonable explanations for not performing services under a contract or for a software platform not working as advertised.

Defendant argues that plaintiff has not pleaded actual damages resulting from the alleged slander. As discussed above, the statements that plaintiff stole $300,000 from Lenovo and that plaintiff's technology had been stolen from Lenovo are slander *per se*, for which damages are presumed as a matter of law. See Cummings, 590 F. Supp.2d at 774. Accordingly, defendant's motion to dismiss is denied with respect to those statements.

By contrast, where the remaining slander *per quod* statements do not benefit from a damages presumption, plaintiff fails to state a claim for those statements. Plaintiff asserts that it has suffered "irreparable harm, substantial financial losses, and damage to its business and reputation, including monetary damages." (Compl. ¶24, 33). However, the factual allegations in the complaint do not

permit such an inference. Plaintiff alleges that Numeric "threatened to end its business relationship" with plaintiff, not that Numeric did end the relationship. (Id. at ¶19). Plaintiff does not explain how Numeric's threat resulted in pecuniary loss, nor does it allege that Numeric took any other damaging actions toward plaintiff. In light of these deficiencies, plaintiff's damages allegations are insufficient to make his claim to pecuniary loss plausible on its face. See Iqbal, 556 U.S. at 678.[2] Therefore, plaintiff's slander claim with respect to the slander *per quod* statements is dismissed without prejudice.

    3. Unfair and Deceptive Trade Practices Act Claim

    Lastly, plaintiff alleges that defendant violated North Carolina's UDTPA. To prevail on a UDTPA claim, plaintiff must show: "(1) defendant committed an unfair or deceptive act or practice, (2) the action in question was in or affecting commerce, and (3) the act proximately caused injury to the plaintiff." Dalton v. Camp, 353 N.C. 647, 656 (2001). Slander *per se* in a business setting may constitute an unfair or deceptive act sufficient to meet the first element of a UDTPA claim. See Ellis v. Northern Star Co., 326 N.C. 219, 225 (1990). However, in order to satisfy the injury element in its UDTPA claim, plaintiff must allege "actual injury," and cannot rely solely on the presumption of damages from its slander *per se* claim. Id. at 226; see Exclaim, 2012 WL 3023429, at *9; Ausley v. Bishop, 133 N.C.App. 210, 216-17 (1999) ( recognizing a "conclusive presumption of legal injury and damage" for slander *per se*, while separately analyzing whether "actual injury" was shown for purposes of UDTPA claim).

    Defendant argues that plaintiff fails to allege that defendant proximately caused actual injury to plaintiff. "Actual injury may include the loss of the use of specific and unique property, the loss

---

[2] Although the Walsh declaration includes further factual allegations bearing on financial loss, plaintiff includes no such facts in its complaint.

of any appreciated value of the property, <u>and such other elements of damages as may be shown by the evidence</u>." <u>Belcher v. Fleetwood Enters., Inc.</u>, 162 N.C.App. 80, 85 (2004) (emphasis added). A general allegation of damage to reputation is insufficient by itself to establish actual injury. <u>See Arendas ex rel. Arendas v. North Carolina High Sch. Athletic Ass'n, Inc.</u>, 217 N.C.App. 172, 175 (2011) ("injury in fact must be particularized and actual, not hypothetical or conjectural"). Rather, some additional information about how the damage to reputation injured plaintiff must be alleged. <u>See Market Choice, Inc. v. New England Coffee Co.</u>, No. 5:08–CV–90, 2009 WL 2590651, at *11 (W.D.N.C. Aug. 18, 2009) ("[Plaintiff] alleges that the defamatory statements have 'diminished its ability to retain and generate new clients.' With this more specific allegation of injury . . . [plaintiff] states a plausible UDTP[A] claim" (citation omitted)); <u>see also</u> <u>Exclaim</u>, 2012 WL 3023429 (allegations of loss of customers).

Plaintiff alleges that it "relies upon its untarnished reputation to promote its services to potential clients and customers," and that defendant caused damage to plaintiff's business reputation. (Compl. ¶29, 33). However, such allegations are insufficient to establish actual injury. Plaintiff alleges that defendant made slanderous statements to plaintiff's business partner Numeric, but plaintiff does not allege that defendant did so to potential clients or customers. (<u>See</u> Compl. ¶15). Accordingly, the allegations in the complaint only support a conclusion that plaintiff's business reputation was damaged in the eyes of Numeric alone.

With respect to how loss of business reputation with Numeric injured plaintiff, plaintiff merely alleges that Numeric threatened to end its business relationship with plaintiff. However, hypothetical injury is insufficient to establish actual injury. <u>See</u> <u>Arendas</u>, 217 N.C.App. at 175. Further, as discussed above under the court's slander *per quod* analysis, has not alleged sufficient

12

facts concerning pecuniary loss to state a claim premised upon slander *per quod*. Therefore, plaintiff fails to allege actual injury, and plaintiff's UDTPA claim is dismissed without prejudice.

D.      Failure to Join Lenovo

Defendant moves to dismiss pursuant to Rule 12(b)(7) for failure to join Lenovo under Rule 19. However, defendant admits in his memorandum in support of his motion that it is "difficult, if not impossible" to determine whether plaintiff is required by Rule 19 to do so. (DE 20–1 at 8 n.2). Aside from his admission of uncertainty, defendant makes no argument for dismissal under 12(b)(7), and  thus is not entitled to dismissal on such grounds. See Am. Gen. Life & Accident Ins. Co. v. Wood, 429 F.3d 83, 92 (4th Cir. 2005) (the burden of proof rests on the moving party to show that a party must be joined for just adjudication). Thus, defendant's motion to dismiss pursuant to Rule 12(b)(7) is denied without prejudice.

## CONCLUSION

Based on the foregoing, defendant's motion to dismiss is GRANTED in part and DENIED in part. (DE 19). The court DENIES defendant's motion to dismiss as to subject matter jurisdiction. The court GRANTS defendant's motion to dismiss as to plaintiff's tortious interference,  slander *per quod*, and unfair and deceptive trade practices claims, and such claims are DISMISSED WITHOUT PREJUDICE. The court DENIES defendant's motion to dismiss as to plaintiff's slander *per se* claim, and such claim shall be allowed to proceed. Finally, the court DENIES WITHOUT PREJUDICE defendant's motion to dismiss on the basis of failure to join a party under Rule 19. The clerk is DIRECTED to continue management of this case.

SO ORDERED, this the 31st day of July, 2015.

_____
LOUISE W. FLANAGAN
United States District Judge