**IN THE UNITED STATES DISTRICT COURT**
**FOR THE EASTERN DISTRICT OF NORTH CAROLINA**
**WESTERN DIVISION**

| | | |
|---|---|---|
| TMM DATA, LLC, a Pennsylvania limited liability company, | ) ) ) | No. 5:14-cv-00729 |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| v. | ) | |
| | ) | |
| ASHISH BRAGANZA, an individual, | ) | |
| | ) | |
| Defendant. | ) | |
| | ) | |

**PLAINTIFF TMM DATA, LLC'S COMBINED RESPONSE TO DEFENDANT'S MOTION FOR RULE 11 SANCTIONS [DKT. 58] AND DEFENDANT'S MOTION FOR ATTORNEYS' FEES, COSTS, EXPENSES, AND/OR OTHER RELIEF UNDER 28 U.S.C. § 1927, N.C. GEN. STAT. § 75-16.1, AND/OR PURSUANT TO THE COURT'S INHERENT POWER [DKT. 59]**

## I. INTRODUCTION

Plaintiff TMM Data, LLC ("TMM Data" or "Plaintiff"), by and through its undersigned attorneys, hereby submits its Combined Response to Defendant Ashish Braganza's ("Defendant") Motion for Rule 11 Sanctions [Dkt. 58] ("Defendant's Rule 11 Motion") and Defendant's Motion for Attorneys' Fees, Costs, Expenses, and/or Other Relief Under 28 U.S.C. § 1927, N.C. Gen. Stat. § 75-16.1, and/or Pursuant to the Court's Inherent Power [Dkt. 59] ("Defendant's Fee Motion") (collectively, "Defendant's Motions").

Defendant's Rule 11 Motion should be denied for at least two reasons: (1) Defendant failed to conform to the explicit requirement of Rule 11 that the motion must be served on the opposing party at least twenty-one days before filing the motion with the district court; and (2) Defendant has failed to demonstrate that Plaintiff brought the lawsuit for an improper purpose, that Plaintiff's claims are frivolous or not warranted by existing law, or that Plaintiff's factual contentions lack evidentiary support.  Similarly, Defendant's Fee Motion fails because Defendant has failed to demonstrate that (1) Plaintiff multiplied the proceedings unreasonable or vexatiously, as required under 28 U.S.C. § 1927; (2) Plaintiff knew, or should have known, that the action was frivolous and malicious, as required under N.C. Gen. Stat. 75-16.1; or (3) Plaintiff has acted in bad faith, vexatiously, wantonly, or for oppressive reasons, as required for the Court to exercise its inherent power to sanction.

Because Defendant has failed to demonstrate any of the facts required to support his Rule 11 Motion or his Fee Motion, both motions should be properly denied.

## II. RESPONSE TO DEFENDANT'S "RELEVANT FACTS"

The section entitled "Procedural History & Relevant Facts" of Defendant's Memorandum in Support of His Motions [Dkt. No. 60] misstates and omits significant facts.  Defendant's faulty statements are presented below in italics, followed by Plaintiff's response.

- *"Plaintiff's original Complaint [was] filed in October 2014 but not formally served until December 2014...."* [Dkt. No. 60, p. 3] By omitting the actual dates of filing and service and by omitting the reason why there was an interval between filing and service, Defendant apparently wants the Court to infer that the interval between filing and service was longer than it actually was and that it was due to Plaintiff's delay. In actuality, the Complaint was filed on October 28, 2014 [Dkt. No.1], the Court issued the summons on October 30, 2014 [Dkt. No. 4], and formal service occurred thirty-two days later, on December 1, 2014 [Dkt. No. 5, p. 1]. Defendant also omits the fact that Plaintiff's counsel sent a courtesy copy of the complaint to Defendant by email **the day after it was filed**, on October 29, 2014, [Dkt. No. 63-1], and omits the unrebutted fact that formal service on Defendant was initiated "immediately" after filing but that service "proved difficult" [Dkt No. 50, Barlow Declaration, ¶ 3], *i.e.*, Defendant was evading service.

- *"Remarkably, Plaintiff and its counsel admitted that they did not have any communications with Mr. Sunderhauf or Mr. Braganza before filing the Complaint in October 2014."* [Dkt. No. 60, p. 3.] Defendant omits the fact that Plaintiff "attempted to arrange a discussion with Mr. Sunderhauf…, but Mr. Prunty communicated to [Plaintiff] that **Mr. Sunderhauf was unwilling to conduct any such discussion**." [Declaration of Chris Walsh, Dkt. No. 49, ¶ 13.] This is confirmed by another fact omitted by Defendant: that Plaintiff sent a message to Mr. Sunderhauf via LinkedIn but Mr. Sunderhauf did not respond to the message. [Walsh Declaration, Dkt. No. 49, ¶ 14.] That LinkedIn message is an attachment to the January 15, 2015 letter submitted with Defendant's papers, but the Defendant's papers conveniently omit the attachments from the letter. A full copy of the letter, with the attached LinkedIn message, can be found at Dkt. No. 63-2.

- *"Had [Plaintiff and its counsel communicated with Mr. Sunderhauf or Mr. Braganza before filing the Complaint], they would have confirmed there was no good-faith basis for bringing any of Plaintiff's claims."* [Dkt. No. 60, p. 3.] The Sunderhauf declaration does not "confirm[] that

2

there was no good-faith basis for bringing any of Plaintiff's claims." Rather, it merely confirms that Mr. Sunderhauf decided to offer a different version of the facts than Mr. Prunty. Mr. Prunty's testimony is not untrue merely because it is controverted. It was permissible for Plaintiff to rely in good faith on Mr. Prunty's testimony even if after it was controverted by Mr. Sunderhauf.[1] That is why Plaintiff prepared subpoenas for Mr. Sunderhauf and other third parties [Dkt. No. 63-3] and served discovery requests on Mr. Braganza [Barlow Declaration, Dkt. No. 50, ¶¶ 5-6 & Exs. A-D thereto] to discover evidence that Mr. Sunderhauf's declaration is false. But it has become apparent to Plaintiff that such discovery will be an expensive endeavor, particularly in light of Defendant's refusal to appropriately respond to Plaintiff's discovery requests and the necessity of a motion to compel in order to force Defendant to do so [Barlow Declaration, Dkt. No. 50, ¶ 6 & Exs. A-D].

- "*To date, Plaintiff has produced no evidence showing that Plaintiff or its counsel had a good-faith basis to believe that Plaintiff's alleged damages exceeded $75,000 at the time Plaintiff filed its Complaint in October 2014, or at any time thereafter.*" [Dkt. No. 60, pp. 3-4.] "*At no time in this case has Plaintiff produced evidence showing how it was damaged, much less confirming a good-faith basis for believing its damages exceeded $75,000.*" [Id.] These statements are blatantly false. Plaintiff submitted such evidence in the form of the Declaration of Chris Walsh in Support of Plaintiff TMM Data, LLC's Memorandum in Opposition to Defendant's Rule 12 Motion to Dismiss (filed March 2, 2015). [Dkt. No. 22-1.] That declaration explained that "[i]n September 2014, TMM Data and Numeric Analytics were working on the early stages of a number of projects where TMM Data would provide technology for Numeric Analytics to work with clients across a range of

---

[1] Mr. Braganza has now also submitted a declaration in connection with Defendant's Motions, but he does not testify in that declaration that he did not make the slanderous statements in question. Instead, he makes only the conclusory statement that "[a]t no time have I engaged in any unlawful conduct towards TMM Data or its co-owners individually, including as specifically alleged in Paragraphs 15 and 17 of the Complaint." [Dkt. No. 60-2 ¶ 2.] His disavowal of only "unlawful conduct" leaves open the possibility that he made the statements in Paragraphs 15 and 17 of the Complaint while relying on an argument that those statements were not false. In any event, it was permissible for Plaintiff to rely in good faith on Mr. Prunty's testimony even if it has now been controverted by Mr. Braganza.

3

business intelligence needs" and that "[t]he total revenue that TMM Data expected to receive from the new projects would have surpassed $100,000.00." [Dkt. No. 22-1, ¶¶ 3-4.[2]] Indeed, this Court relied on the Walsh declaration in response to Defendant's Rule 12 Motion to Dismiss to reject the very argument that Defendant is making once again here. [Dkt. No. 31, p. 6 (rejecting argument that there is no diversity jurisdiction) ("Walsh's declaration suggests that plaintiff's damages surpass $100,000."); see also id. at p. 11 n.2 ("Although the Walsh declaration includes further factual allegations bearing on financial loss, plaintiff includes no such facts in its complaint.").]

- *"Given that Lenovo is not a party-defendant, it can go without saying that Plaintiff filed the Complaint and then sent the October 29, 2014 email to negatively impact Mr. Braganza's employment with Lenovo*." [Dkt. No. 60, p. 5.] This statement is not true and is contradicted by the email cited. In point of fact, the October 29, 2014 email to Lenovo expressly states what its purpose was as well as the Complaint's purpose: It states that the Complaint was filed "because Mr. Braganza has been approaching our customers in an effort to disrupt our business" by slandering TMM Data and its personnel and "urging our customers to cease doing business with us." [Dkt. No. 60-7, p. 1.] To stop someone from slandering and interfering with business is not an improper purpose for filing a Complaint. The email further states that a copy of the Complaint was sent to Lenovo because although TMM Data did "not believe that [Defendant's] actions are sanctioned by Lenovo," TMM Data "wanted to give you a heads up of this action prior to your hearing it through a 3d party" and "so that you can be aware of these activities that are damaging to our business, as well as Lenovo's brand." [Dkt. No. 60-7, p. 2.] The email also stated that "Any assistance you can give to bringing an end to this unprofessional and disparaging behavior would be appreciated." [Dkt. No. 60-7, p. 2.] The email shows the purpose of the Complaint and the email was not to negatively impact Defendant's employment, but to stop Defendant from making slanderous and tortiously interfering

---

[2] Mr. Walsh reaffirmed this testimony in the declaration filed in support of Plaintiff's motion to dismiss with prejudice. [Walsh Declaration, Dkt. No. 49, ¶ 8.]

statements. This purpose is confirmed by the Declaration Of Chris Walsh In Support Of Plaintiff TMM Data's Combined Response To Defendant's Motion For Rule 11 Sanctions [Dkt. 58] And Defendant's Motion For Attorneys' Fees, Costs, Expenses, And/Or Other Relief Under 28 U.S.C. § 1927, N.C. Gen. Stat. § 75-16.1, And/Or Pursuant To The Court's Inherent Power [Dkt. 59] ("Second Walsh Declaration"), filed concurrently herewith under seal.. [Second Walsh Declaration, ¶ 3.]

- *"[Defendant's] January 15 [2015] letter attached a proposed settlement agreement: (i) containing mutual general releases and non-disparagement provisions; (ii) stating that Plaintiff would voluntarily dismiss the lawsuit; and (iii) stating that Plaintiff would reimburse Mr. Braganza $10,000 to cover Mr. Braganza's approximate attorneys' fees.… Plaintiff and its counsel flatly rejected the settlement offer.…"* [Dkt. No. 60, p. 6.] This statement is false. Defendant is attempting to imply that Plaintiff was unreasonable in rejecting this settlement offer, but a simple perusal of the settlement offer shows that it did **not** contain "mutual general releases," only a release by Plaintiff in favor of Defendant [Dkt. No. 60-4 at ¶ 4], and the so-called "non-disparagement provisions" in the settlement offer only precluded "false public statement[s]," not "false private statements" like the ones that had given rise to this lawsuit in the first place. [Dkt. No. 60-4 at ¶ 7.] Therefore, the settlement offer was not reasonable, and Plaintiff told Defendant just that in an email [Dkt. No. 63-4]. Significantly, in responding to Plaintiff's motion to dismiss, Defendant did not rebut the fact provided in Plaintiff's motion that "[s]hortly after the filing of this lawsuit, TMM Data offered to dismiss the lawsuit against Mr. Braganza if he would agree to stop disparaging TMM Data" but that "Mr. Braganza refused." [Dkt. No. 48 at ¶ 18 (citing Walsh Declaration, Dkt. No. 49, at ¶ 16).] That offer is strong evidence that the purpose of filing the Complaint was to stop Defendant from disparaging Plaintiff. Defendant offers no explanation for why it was reasonable for *him* to insist on continuing the lawsuit in the face of *this* settlement offer.

- "*The January 15 letter also requested that Plaintiff provide a signed declaration from Joseph Prunty since Plaintiff's counsel raised that issue in his January 8 letter. …. Plaintiff never responded to this request.*" [Dkt. No. 60, p. 6.] Defendant seems to suggest that Plaintiff has an obligation to provide a sworn declaration merely because Defendant requested it in a letter. However, Defendant's January 15, 2015 letter was not a formal discovery request, nor an order of the Court mandating compliance.  Further, Defendant's statements are disingenuous as Plaintiff's Complaint set forth the statements communicated by Mr. Prunty, and Plaintiff's Initial Disclosures identified Mr. Prunty as a person who had knowledge of Plaintiff's claims.  Defendant could have deposed Mr. Prunty at any time to further ascertain his testimony yet Defendant never made any effort to do so.  In fact, counsel for Defendant contacted Mr. Prunty, and Mr. Prunty did verified the statements made by Defendant to Mr. Sunderhauf.  [*See* Declaration of Joseph Prunty ("Prunty Decl."), ¶ 21.]  In any event, Plaintiff has provided the Declaration of Joseph Prunty concurrently with the filing of this paper to further demonstrate the good faith basis for its Complaint.

- "*Between March 19, 2015 and late August 2015, and with the exception of serving Rule 26 Initial Disclosures, the number of written discovery requests, deposition notices and/or other discovery that Plaintiff served on Defendant or third-parties amounted to the following number: zero (0).*"  [Dkt. No. 60, p. 7.]  This is because Defendant had not yet filed an Answer and therefore "Plaintiff was not yet aware of Defendant's defenses to the claims set forth in the Complaint."  [Dkt. No. 48, ¶ 20.]  Plaintiff was reasonable in waiting to serve discovery requests until it knew what Defendant's defenses were.  And within 10 days after Defendant served its Answer, Plaintiff served written discovery on Defendant.  [Barlow Declaration, Dkt. No. 50, ¶ 5.]  Moreover, Plaintiff prepared subpoenas for relevant third parties, including Lenovo and Mr. Sunderhauf.  [Dkt. No. 63-3.]  Notably, Defendant's responses to Plaintiff's discovery requests were woefully deficient, a fact

which Defendant did not rebut in response to Plaintiff's motion to dismiss. [Dkt. No. 48, ¶¶ 27-28 (citing Barlow Declaration, Dkt. No. 50, ¶¶ 5-6 & Exhs. A-D thereto); Dkt. No. 61; Dkt. No. 63, p.5.]

- "*Plaintiff's Co-Owner Robert Selfridge Provides False Testimony in June 2015.*" [Dkt. No. 60, p. 7.] "*Joseph Sanders' declaration…indicated that Plaintiff's co-owner provided false deposition testimony.*" [Dkt. No. 60, p. 8.] Defendant says that Mr. Selfridge's testimony was "false" because it has now been contradicted by a declaration from Joseph Sanders. But the Sanders declaration at most shows that Mr. Sanders has a different recollection of the facts than Mr. Selfridge. Mr. Selfridge's testimony is not "false" merely because it is controverted. In any event, Mr. Sanders' declaration only testifies that "to the extent Mr. Selfridge testified" that Mr. Sanders "previously advised [Mr. Selfridge] that Mr. Braganza made false statements to Comcast about TMM Data," "his testimony is not accurate." [Dkt. No 55-6, ¶ 6.] Mr. Sanders' declaration may simply mean that he only related Mr. Braganza's statements about TMM Data to Mr. Selfridge and that he did not further tell Mr. Selfridge that Mr. Braganza's statements to Mr. Sanders about TMM Data were "false." This would be completely consistent with Mr. Selfridge's testimony, who was able to conclude on his own that such statements were false.

- "*Although Plaintiff became aware of the Court's Rule 12 ruling on July 31, 2015, it waited two-and-a-half months to file its motion to amend the Complaint.*" [Dkt. No. 60, p. 9.] "*Plaintiff did not seek to amend the Complaint: (i) in the 21-day period after filing the original complaint; (ii) in the 21-day period after Mr. Braganza filed his Rule 12 motion; (iii) after Mr. Braganza spent substantial time and resources fully-briefing his Rule 12 motion and taking discovery; and/or (iv) in a timely manner after the Court issued its July 31, 2015 Order.*" [Dkt. No. 61, p. 9.] "*Although the Rule 12 motion clearly summarized the original Complaint's myriad defects, Plaintiff did not amend the complaint as a matter of course during the twenty-one (21) days after Mr. Braganza filed his motion [to dismiss].*" [Dkt. No. 61, p. 7.] Plaintiff did not amend the complaint in

any of the first three time periods mentioned above because it believed—based on the arguments made in its opposition to Defendant's motion to dismiss [Dkt. No. 22]—that its complaint was sufficiently pled. It turns out that the Court concluded that Plaintiff's complaint was sufficiently pled on some points and insufficiently pled on others. [Dkt. No. 31.] But the fact the Court determined that Plaintiff was incorrect on some points does not mean that Plaintiff's arguments were frivolous or made in bad faith. Moreover, Defendant's further assertion that Plaintiff "waited two-and-a-half months" after the Court's ruling on the motion to dismiss to file its motion to amend the Complaint misleadingly omits significant facts. The deadline specified in the scheduling order for moving to amend was only one business day after the Court's ruling on the Motion to Dismiss [Dkt. No. 31; Dkt. No. 24, p. 6, ¶ B], so Plaintiff first proposed to Defendant to move the Court to amend the scheduling order. Defendant would **not** stipulate to amending the scheduling order, so Plaintiff was forced to move to do so [Dkt. No. 34, 35], which motion the Court granted [Dkt. No. 41]. Plaintiff then moved within a few short weeks to amend the complaint. [Dkt. No. 42.] So the two-and-a-half-month "delay" to which Defendant points is attributable in large part to Defendant itself, a fact which Defendant does not disclose. Plaintiff acted with reasonable diligence.

- "*As late as November 2015, Plaintiff executed a term sheet[.]*" [Dkt. No. 60, p. 16.] "*Plaintiff and its counsel then inexplicably moved to dismiss Plaintiff's claims.*" [Dkt. No. 60, p. 16.] Defendant attempts to mischaracterize the factual history of this case in order to cast Plaintiff in the most negative light. The details of the November 2015 term sheet (which was acknowledged as confidential between the parties), and Plaintiff's rationale for voluntarily dismissing its claims with prejudice, are more fully set forth in the Second Walsh Declaration, filed concurrently herewith under seal.

- "*A review of the docket report [in Skullcandy, Inc. v. Rees] shows that for almost…six months, Skullcandy did nothing to prosecute the case.*" [Dkt. No. 60, p. 11.] What another client of

8

Plaintiff's counsel may have done in another case is completely irrelevant here, and its reference is entirely inappropriate. Defendant's reference to the Skullcandy case shows how desperate its assertions really are. In any event, the facts recited below make clear that in the instant action Plaintiff did much more than "nothing" in the instant case.

## III.    STATEMENT OF RELEVANT FACTS

1.    Plaintiff TMM Data was founded in 2008, and has created a data management software platform that it markets and sells. [Complaint (Dkt. No. 1), ¶ 9; Walsh Declaration, Dkt. No. 49, ¶ 3.]

2.    On or about March 9, 2012, Plaintiff entered into a contract with Lenovo Inc. ("Lenovo") whereby Plaintiff would license its data management software platform to Lenovo, and would further provide custom software development services to Lenovo. [Complaint at ¶ 10; Walsh Decl., Dkt. No. 49, ¶ 4.]

3.    Defendant was and is an employee of Lenovo, and was tasked by Lenovo to be a main point of contact at Lenovo for the services to be provided by Plaintiff. [Complaint at ¶ 11; Walsh Decl., Dkt. No. 49, ¶ 5.]

4.    By Spring 2014, both Plaintiff and Lenovo mutually agreed that it would be in both parties' interest to end the contractual relationship, and on July 1, 2014 the contract between the parties was terminated. [Complaint at ¶ 12; Walsh Decl., Dkt. No. 49, ¶ 6.]

5.    On or about July 1, 2014, Plaintiff entered into a business and contractual relationship with Numeric Analytics, a marketing and analytics consulting firm based in Denver, Colorado, whereby Plaintiff and Numeric Analytics would partner together to provide business solutions to consumers in a wide array of industries. [Complaint at ¶ 13; Walsh Decl., Dkt. No. 49, ¶ 7.]

6.    In September 2014, Plaintiff and Numeric Analytics were working on the early stages of a number of projects where TMM Data would provide technology for Numeric Analytics to work with clients across a range of business intelligence needs. Plaintiff expected that the total revenue

9

that it would receive from the projects would have surpassed $100,000. [Proposed Amended Complaint, Dkt. No. 43-1, ¶ 14; Walsh Decl., Dkt. No. 49, ¶ 8; *accord* Dkt. No. 22-1, ¶¶ 4-5.]

7.     In late September 2014 and continuing through early October 2014, Joseph Prunty, Senior Account Director for Numeric Analytics, called Chris Walsh, co-founder of Plaintiff multiple times to discuss the relationship between Numeric Analytics and Plaintiff. In one such conversation, Mr. Prunty asked Mr. Walsh if he "could ask [Mr. Walsh] an uncomfortable question." [Complaint at ¶ 14; Walsh Decl., Dkt. No. 49, ¶ 9.]

8.     Mr. Prunty stated that Defendant had contacted Jim Sunderhauf, the Director of Business Services (and a partner) at Numeric Analytics, to ask why Numeric Analytics was working with Plaintiff. Specifically, Mr. Prunty told Mr. Walsh that Defendant told Mr. Sunderhauf that (1) Plaintiff had stolen $300,000 from Lenovo, (2) Plaintiff did not perform services under its contract with Lenovo, (3) Plaintiff's technology was owned by Lenovo and had been stolen from Lenovo, (4) Plaintiff's data management software platform did not work as advertised, (5) Mr. Walsh was a "con man" who was not to be trusted, and (6) Lenovo was currently suing Plaintiff over these issues. Plaintiff asserts that each of these alleged statements are untrue. [Complaint at ¶¶ 15, 18; Walsh Decl., Dkt. No. 49, ¶ 10; Prunty Decl., ¶¶ 9-14.]

9.     Mr. Prunty told Mr. Walsh that Defendant further encouraged Numeric Analytics to sever its professional relationships with Plaintiff. [Complaint at ¶ 17; Walsh Decl., Dkt. No. 49, ¶ 11.]

10.     Defendant disputes these allegations. [Defendant's Answer To Plaintiff's Complaint (Dkt. No. 32).]

11.     Mr. Prunty told Mr. Walsh that as a result of Defendant's statements, Mr. Prunty was instructed by management at Numeric Analytics not to communicate with Plaintiff any further, and Numeric Analytics ceased communicating with Plaintiff at least as early as November 2014.

[Proposed Amended Complaint, Dkt. No. 43-1, ¶ 20; Walsh Decl., Dkt. No. 49, ¶ 12; *see also* Dkt. No. 22-1, ¶ 6.]

12.     TMM Data attempted to arrange a discussion with Mr. Sunderhauf to rebut the allegations made by Defendant, but Mr. Prunty communicated to TMM Data that Mr. Sunderhauf was unwilling to conduct any such discussion.  [Walsh Decl., Dkt. No. 49, ¶ 13.]

13.     TMM Data further attempted to contact Mr. Sunderhauf via LinkedIn, the only other contact information TMM Data had for Mr. Sunderhauf.  However, Mr. Sunderhauf did not respond to the LinkedIn message.  [Walsh Decl., Dkt. No. 49, ¶ 14; Dkt. No. 63-2.]

14.     By March 2015, Numeric Analytics had removed all references to Plaintiff from its website, and had replaced Plaintiff's logo with the logo of one of Plaintiff's main competitors. [Proposed Amended Complaint, Dkt. No.43-1, ¶ 21; Walsh Decl., Dkt. No. 49, ¶ 15.]

15.     TMM Data filed its initial Complaint against Defendant on October 28, 2014.  In that Complaint, TMM Data alleged claims against Defendant for (1) North Carolina Defamation/Slander; (2) Violation of North Carolina Deceptive Trade Practices Act; and (3) Tortious Interference with Contractual Relations.  [*See* Complaint, Dkt. No. 1.]

16.     TMM Data immediately initiated service of process against Defendant, but service proved difficult.  [Barlow Decl., Dkt. No. 50, ¶ 3.]  Service was eventually effectuated on December 1, 2014.  [Dkt. No. 5.]  Counsel for TMM Data and counsel for Defendant then agreed to a 30-day extension of time for Defendant to respond to the Complaint, until January 21, 2015.  [Dkt. No. 5.]

17.     On December 17, 2014, Counsel for Defendant sent to Plaintiff a declaration signed by Jim Sunderhauf contradicting the allegations of the Complaint, and asserted that "the obligations [of Rule 11] clearly were not met" by Plaintiff.  [Dkt. No. 55-3.]  Plaintiff explained that the obligations of Rule 11 had been met and that "any Rule 11 motion [Defendant] might bring would fail." [Dkt. No. 60-1.]  The parties exchanged further correspondence regarding these allegations, with Plaintiff explaining to Defendant that his "threats to file a Rule 11 motion" did not have merit.

11

[Dkt. Nos.63-2 and 63-4.] Defendant did not file a Rule 11 Motion as threatened until it filed this motion nearly a year later, on December 17, 2015 [Dkt. No. 58.], and failed to serve the Rule 11 Motion on Plaintiff at all prior to filing it. [Declaration of Matthew A. Barlow in Support of Plaintiff's Combined Response To Defendant's Motion For Rule 11 Sanctions [Dkt. 58] And Defendant's Motion For Attorneys' Fees, Costs, Expenses, and/or Other Relief Under 28 U.S.C. § 1927, N.C. Gen. Stat. § 75-16.1, and/or Pursuant To The Court's Inherent Power [Dkt. 59] ("Second Barlow Decl."), ¶ 6.]

18.     Meanwhile, counsel agreed to a second extension of time for Defendant to respond to the Complaint, until February 6, 2015, in order to explore settlement discussions. [Dkt. No. 15.] Defendant demanded that Plaintiff pay $10,000 in attorney's fees and grant a one-sided release to Defendant in exchange for a non-disparagement provision that only precluded "false public statement[s]." [Dkt. No. 63-2, p. 8.] Understandably, TMM Data declined. [Dkt. No. 63-4.] On the other hand, TMM Data offered to dismiss the lawsuit against Mr. Braganza if he would agree to stop disparaging TMM Data. Mr. Braganza refused. [Walsh Decl., Dkt. No. 49, ¶ 16.]

19.     Defendant responded to the Complaint on February 6, 2015 by filing Defendant's Rule 12 Motion to Dismiss [Dkt. No. 19], wherein Defendant sought dismissal of all claims under Federal Rule of Civil Procedure 12(b)(6) for failure to state a claim, and sought dismissal under Federal Rule of Civil Procedure 12(b)(1) alleging that TMM Data could not prove the existence of diversity jurisdiction ("the Motion to Dismiss"). The Motion to Dismiss was fully briefed and submitted to the Court on March 19, 2015. [Dkt. No. 25.]

20.     As no Answer to the Complaint was yet filed, Plaintiff was not yet aware of Defendant's defenses to the claims set forth in the Complaint. [Barlow Decl., Dkt. No. 50, ¶ 4.]

21.     The Court entered an Order resolving the Motion to Dismiss on July 31, 2015 [Dkt. No. 31], wherein the Court granted in part and denied in part the Motion to Dismiss.

22.     Specifically, the Court denied the Motion to Dismiss as to subject matter jurisdiction under Rule 12(b)(1), but granted the Motion to Dismiss under Rule 12(b)(6) as to TMM Data's tortious interference claim, unfair and deceptive trade practices claim, and those portions of TMM Data's slander claim that constituted slander *per quod*. The Court dismissed these claims "without prejudice." The court further denied the Motion to Dismiss under Rule 12(b)(6) as to those portions of TMM Data's slander claim that constituted slander *per se*.

23.     On August 17, 2015, Defendant finally filed his Answer to TMM Data's Complaint [Dkt. No. 32], and Plaintiff served written discovery on Defendant on August 27. [Barlow Decl., Dkt. No. 50, ¶ 5.]

24.     Despite the fact that the time for TMM Data to amend the pleadings had already passed and that only 95 of the original 234 days for discovery remained, Defendant refused to agree to any extension of the deadlines set forth in the Case Management Order.  Therefore, Plaintiff was forced to file a motion to amend the Case Management Order.  [Dkt. Nos. 34, 35.]

25.     Defendant opposed the motion [Dkt. No. 40], but the Court granted the motion the next day. [Dkt. No. 41.]

26.     On October 13, 2015, Plaintiff filed a motion for leave to file an amended complaint to cure the deficiencies identified in the Court's order on the Motion to Dismiss and to add an additional claim for relief.  [Dkt. Nos. 42, 43.]  Defendant has opposed that motion as well.  [Dkt. No. 45.]

27.     On September 29, 2015, Defendant served its responses to Plaintiff's written discovery.   On October 23, 2015, counsel for Plaintiff wrote a letter to counsel for Defendant explaining that Plaintiff's discovery responses were wholly deficient, identifying the deficiencies in Defendant's discovery responses, and requesting that Defendant cure those deficiencies. [Barlow Decl., Dkt. No. 50, ¶ 6.]  Specifically, the letter stated that Defendant had produced a mere 3 pages in response to 14 document requests, and that Defendant had provided non-responsive and legally

incomplete responses to 10 of the 11 interrogatories served by TMM Data. [Barlow Decl., Dkt. No. 50, ¶ 6.]

28. Counsel for Defendant responded on November 6, 2015, arguing that the responses were not deficient. [Barlow Decl., Dkt. No. 50, ¶ 6.]

29. Plaintiff then prepared subpoenas for Mr. Sunderhauf, Numeric Analytics, and Lenovo, and provided a copy of those subpoenas to Defendant. [Dkt. No. 63-3.]

30. On November 10, 2015, counsel for TMM Data reached out to counsel for Defendant to see if a settlement could be reached. [Barlow Decl., Dkt. No. 50, ¶ 7.] After several hours of discussion, in the late evening hours of November 10, 2015 or the early morning hours of November 11, 2015, the parties executed a term sheet which contemplated that the parties would negotiate a formal settlement agreement with additional terms. [Barlow Decl., Dkt. No. 50, ¶ 7; Walsh Decl., Dkt. No. 49, ¶ 17.] Counsel for TMM Data provided a first draft of the formal settlement agreement to counsel for Defendant, but after counsel exchanged multiple drafts with one another, it became clear that Defendant would not agree to an important provision. [Barlow Decl., Dkt. No. 50, ¶ 7; Walsh Decl., Dkt. No. 49, ¶ 17; Second Walsh Decl., ¶ 4.]

31. In light of the parties' failure to reach an agreement, TMM Data filed a motion to dismiss this action with prejudice, with each side to bear its own costs and attorney fees. [Dkt. Nos. 47 and 48; Second Walsh Decl., ¶ 4.] TMM Data had a good faith basis for filing this lawsuit and continues to believe that its claims against Defendant have merit. [Walsh Decl., Dkt. No. 49, ¶ 18.] However, given that settlement discussions have failed, TMM Data has determined that continuing to spend money on attorney fees in this action in order to vindicate its rights does not make economic sense, and TMM Data is willing to accept a dismissal with prejudice in this case. [Walsh Decl., Dkt. No. 49, ¶ 18.]

32. This case is still at an early stage. Only one deposition has taken place, discovery is still ongoing, no summary judgment motions have been filed, and no trial date has been set. [Barlow

Decl., Dkt. No. 50, ¶ 8.]  In order to continue with this case, TMM Data would likely need to file a motion to compel Defendant to respond to TMM Data's written discovery requests, would likely need to seek documents from Mr. Sunderhauf, Lenovo, and Numeric Analytics, would likely need to take the depositions of at least Defendant and Sunderhauf, and would likely need to present all of the evidence gathered at trial, at considerable additional expense to TMM Data, indeed to both parties. [Barlow Decl., Dkt. No. 50, ¶ 9; Dkt. No. 63-3.]  TMM Data has now concluded that it does not make economic sense to do so.  [Walsh Decl., Dkt. No. 49, ¶ 18; Second Walsh Decl., ¶4.]

33.     On December 17, 2015, Defendant filed Defendant's Rule 11 Motion [Dkt. No. 58] and Defendant's Fee Motion [Dkt. No. 59], seeking the imposition of sanctions against Plaintiff and Plaintiff's counsel.  Defendant had not served its Rule 11 Motion on Plaintiff before filing it. [Second Barlow Decl. ¶ 6.]

## IV.     ARGUMENT

### A.     Defendant's Rule 11 Motion

#### 1.     Defendant is not entitled to sanctions pursuant to Rule 11 because Defendant's Rule 11 Motion is procedurally deficient

The notice requirements of Rule 11 are clear.  Rule 11 states:

A motion for sanctions must be made separately from any other motion and must describe the specific conduct that allegedly violates Rule 11(b). <u>The motion must be served under Rule 5, but it must not be filed or be presented to the court if the challenged paper, claim, defense, contention, or denial is withdrawn or appropriately corrected within 21 days after service or within another time the court sets.</u> If warranted, the court may award to the prevailing party the reasonable expenses, including attorney's fees, incurred for the motion.

Rule 11(c)(2) (emphasis added).  The Rule clearly states that the party seeking sanctions pursuant to Rule 11 must serve its motion on the opposing party at least twenty-one days before filing the motion with the district court.  *See id.*  "It is clear from the language of the rule that it imposes mandatory obligations upon the party seeking sanctions, so that failure to comply with the procedural requirements precludes the imposition of the requested sanctions."  *Brickwood Contractors, Inc. v. Datanet Eng'g, Inc.*, 369 F.3d 385, 389 (4th Cir. 2004) (citing *Elliott v. Tilton*, 64 F.3d 213, 216 (5th

15

Cir.1995) ("The plain language of [Rule 11(c)(1)(A)] indicates that this notice and opportunity prior to filing is mandatory. Plaintiffs did not comply with this procedural prerequisite. Therefore, the sanction and payment of costs and attorneys' fees ordered by the district court cannot be upheld under Rule 11. "Rule 11(c)(1)(A) thus establishes conditions precedent to the imposition of sanctions under the rule. If those conditions are not satisfied, the Rule 11 motion for sanctions may not be filed with the district court. If a non-compliant motion nonetheless is filed with the court, the district court lacks authority to impose the requested sanctions." *Brickwood Contractors*, 369 F.3d at 389.

In this instance, Defendant **did not** serve the Rule 11 Motion on Plaintiff at all prior to the filing of the Rule 11 Motion with the Court, let alone twenty-one days prior as required under Rule 11. [Second Barlow Decl., ¶ 6.] Because the Fourth Circuit considers the notice provision of Rule 11 to be "inflexible claim-processing rules" and further "that a district court exceeds its authority by imposing sanctions requested through a procedurally-deficient Rule 11 motion," *id.* at 396, Defendant's Rule 11 Motion should be denied.

> **2.    Defendant's Rule 11 Motion should be denied as Defendant cannot show that the Plaintiff's claims fail to meet the Rule 11 standard**

Even if the Court were to ignore the procedural deficiency of Defendant's Rule 11 Motion, Plaintiff's claims do not have evidentiary and legal support and thus are not actionable under Rule 11. Section B of Rule 11, which outlines the standards for a pleading filed with the Court, provides:

> By presenting to the court a pleading, written motion, or other paper—whether by signing, filing, submitting, or later advocating it—an attorney or unrepresented party certifies that to the best of the person's knowledge, information, and belief, formed after an inquiry reasonable under the circumstances:
>
> > (1) it is not being presented for any improper purpose, such as to harass, cause unnecessary delay, or needlessly increase the cost of litigation;
> >
> > (2) the claims, defenses, and other legal contentions are warranted by existing law or by a nonfrivolous argument for extending, modifying, or reversing existing law or for establishing new law;
> >
> > (3) the factual contentions have evidentiary support or, if specifically so identified,

will likely have evidentiary support after a reasonable opportunity for further investigation or discovery; and

(4) the denials of factual contentions are warranted on the evidence or, if specifically so identified, are reasonably based on belief or a lack of information.

In determining whether a complaint is well grounded in fact, "[a]n objective test is used to determine the reasonableness of a lawyer's prefiling investigation." *In re Kunstler,* 914 F.2d 505, 514 (4th Cir.1990) (quotation omitted). "Factual allegations fail to satisfy Rule 11(b)(3) when they are 'unsupported by *any* information obtained prior to filing.'" *Morris v. Wachovia Securities, Inc.,* 448 F.3d 268, 277 (4th Cir.2006) (quoting *Brubaker v. City of Richmond,* 943 F.2d 1363, 1373 (4th Cir.1991)). A legal argument must have "absolutely no chance of success under the existing precedent" to violate Rule 11(b)(2). *Id.* (quoting *Hunter v. Earthgrains Co. Bakery,* 281 F.3d 144, 153 (4th Cir.2002)). Sanctions are justified only when "applying a standard of objective reasonableness, it can be said that a reasonable attorney in like circumstances could not have believed his actions to be legally justified." *Id.*

Here, Defendant argues: (i) Plaintiff had an improper purpose in filing the instant action, namely to intimidate Defendant and negatively impact his employment; (ii) Plaintiff failed to make a reasonable investigation of the facts before filing the Complaint, because Plaintiff nor its counsel did not speak to Defendant or Mr. Sunderhauf before filing the Complaint and Plaintiff allegedly did not provide evidence to support its claim that it had been damaged at least in the amount of $75,000 to support diversity jurisdiction; (iii) Plaintiff had no intention of prosecuting this case, as evidenced by the alleged failure to take discovery; (iv) Plaintiff continued the lawsuit in the face of Mr. Sunderhauf's affidavit; and (v) Plaintiff "belatedly abandon[ed] its claims after settlement discussions failed. *See* Defendant's Rule 11 Motion, 15-16. However, the allegations made by Defendant in support of its motion are based on misstatements of fact.

### a) Plaintiff's claims were not brought for an improper purpose

Defendant argues that Plaintiff's claims were brought for an improper purpose, namely to "intimidate" Defendant and "negatively impact his employment with Lenovo." Defendant's allegations are demonstrably untrue. One need look no further than the October 29, 2014 email from Plaintiff to Lenovo, which Defendant cites, to identify Plaintiff's purpose in bringing the suit. The October 29, 2014 email to Lenovo expressly states that the Complaint was filed "because Mr. Braganza has been approaching our customers in an effort to disrupt our business" by slandering TMM Data and its personnel and "urging our customers to cease doing business with us." [Dkt. No. 60-7, p. 1.] To stop someone from slandering and interfering with business is not an improper purpose for filing a Complaint. The email further states that a copy of the Complaint was sent to Lenovo because although TMM Data did "not believe that [Defendant's] actions are sanctioned by Lenovo," TMM Data "wanted to give you a heads up of this action prior to your hearing it through a 3d party" and "so that you can be aware of these activities that are damaging to our business, as well as Lenovo's brand." [Dkt. No. 60-7, p. 2.] The email also stated that "Any assistance you can give to bringing an end to this unprofessional and disparaging behavior would be appreciated." [Dkt. No. 60-7, p. 2.] The email shows that the purpose of the Complaint and the email was not to negatively impact Defendant's employment, but to stop Defendant from making slanderous and tortiously interfering statements. This is confirmed by the Walsh Declaration filed concurrently herewith. [Second Walsh Decl., ¶ 3.][3]

A plaintiff seeking to vindicate its rights and prevent future harm against it is not acting with an improper purpose by filing a lawsuit. *See In re Kunstler*, 914 F.2d 505, 518 (4th Cir. 1990) ("[I]f a complaint is filed to vindicate rights in court, and also for some other purpose, a court should not

---

[3] That Plaintiff's purpose in filing the Complaint was to stop all disparagement of Plaintiff by Defendant is further made clear by settlement proposals offered to Defendant by Plaintiff wherein nondisparagement was the critical provision. *See* Dkt. No. 60-1; Dkt. No. 63-4; Walsh Declaration, Dkt. No. 49, ¶ 16; Second Walsh Decl., ¶ 4.]

sanction counsel for an intention that the court does not approve, so long as the added purpose is not undertaken in bad faith and is not so excessive as to eliminate a proper purpose.") Because the October 29, 2014 email to Lenovo makes clear that Plaintiff is seeking to vindicate its rights in court, there should not be any improper purpose ascribed to Plaintiff.

### b) Plaintiff's investigation was reasonable

The language of Rule 11 requires that an attorney conduct a reasonable investigation of factual contentions before filing. *See Cleveland Demolition Co., Inc. v. Azcon Scrap Corp., a Div. of Gold Field Am. Indus., Inc.,* 827 F.2d 984, 987 (4th Cir. 1987). The attorney's pre-filing investigation must uncover some factual basis to support the factual allegations in the filing. *See Brubaker v. City of Richmond,* 943 F.2d 1363, 1373 (4th Cir. 1991). "Factual allegations fail to satisfy Rule 11(b)(3) when they are 'unsupported by *any* information obtained prior to filing.'" *Morris v. Wachovia Securities, Inc.,* 448 F.3d 268, 277 (4th Cir.2006) (quoting *Brubaker v. City of Richmond,* 943 F.2d 1363, 1373 (4th Cir.1991)). A legal argument must have "absolutely no chance of success under the existing precedent" to violate Rule 11(b)(2). *Id.* (quoting *Hunter v. Earthgrains Co. Bakery,* 281 F.3d 144, 153 (4th Cir.2002)). Sanctions are justified only when "applying a standard of objective reasonableness, it can be said that a reasonable attorney in like circumstances could not have believed his actions to be legally justified." *Id.* This is an objective standard; a court may impose Rule 11(b) sanctions when an attorney maintains a position to a court and under "a standard of objective reasonableness, it can be said that a reasonable attorney in like circumstances could not have believed his actions to be legally justified." *Hunter v. Earthgrains Co. Bakery,* 281 F.3d 144, 153 (4th Cir.2002) (internal quotation marks and citation omitted).

Defendant argues that Plaintiff did not "conduct[] a reasonable investigation before filing the Complaint" because "Plaintiff … had no communications with Mr. Sunderhauf or Mr. Braganza to corroborate Plaintiff's purported claims before filing the instant lawsuit." [Defendant's Rule 11 Motion, 14.] However, Defendant conveniently omits the fact that Plaintiff "attempted to arrange a

discussion with Mr. Sunderhauf…, but Mr. Prunty communicated to [Plaintiff] that Mr. Sunderhauf was unwilling to conduct any such discussion."  [Walsh Decl., Dkt. No. 49, ¶ 13.]  Defendant further ignores the fact that Plaintiff sent a message to Mr. Sunderhauf via LinkedIn but Mr. Sunderhauf did not respond to the message.  [Walsh Decl., Dkt. No. 49, ¶ 14; Exh. 63-2.][4]

As the Declaration of Chris Walsh makes clear, Joseph Prunty told Plaintiff that Mr. Sunderhauf had informed him that Defendant made the statements alleged in the Complaint.  [Walsh Decl., Dkt. No. 49, ¶¶ 9-12.]  Given Mr. Sunderhauf's unwillingness to communicate with Plaintiff, that was a sufficient factual basis for filing the Complaint.  The Declaration of Joseph Prunty, submitted concurrently herewith, further makes clear that Plaintiff's allegations have factual support.  Mr. Prunty affirms that in September 2014, Mr. Sunderhauf contacted him to inquire about the relationship between Numeric and Plaintiff.  [Prunty Decl., ¶ 6.]  Mr. Prunty further affirms that "Mr. Sunderhauf said that Mr. Braganza had stated that TMM Data had stolen a large sum of money from Lenovo, that TMM Data had failed to fulfill its contract with Lenovo, that TMM Data's software was owned by Lenovo and had been stolen from Lenovo, that TMM Data's software platform did not work as advertised, that Mr. Walsh was a 'con man' who was not to be trusted, and that Lenovo was currently suing TMM Data over these issues."  [Prunty Decl., ¶ 9.]  Likewise, Mr. Prunty affirms that he contacted Mr. Walsh to discuss these allegations [Prunty Decl., ¶ 14], and that Mr. Prunty was subsequently told to cease all future communication with Plaintiff.  [Prunty Decl., ¶17.]  Importantly, Mr. Prunty expressly refutes ¶ 6 of the Sunderhauf declaration, stating that "the statement in Paragraph 6 of Mr. Sunderhauf's declaration that 'I have never advised Mr. Prunty that TMM Data

---

[4] That LinkedIn message is an attachment to the January 15, 2015 letter submitted with Defendant's papers, but the Defendant's papers omit the attachments from the letter.  A full copy of the January 15, 2015 letter, with the attachments (including the LinkedIn message), was attached to Plaintiff TMM Data, LLC's Reply Regarding Its Motion To Dismiss With Prejudice (Dkt. No. 63) at pg. 6 of Exhibit 2.

engaged in any of the conduct alleged in Paragraph 15 of the Complaint' is untrue." [Prunty Decl., ¶ 20.][5]

Therefore, it was permissible for Plaintiff to rely in good faith on Mr. Prunty's testimony even if after it was controverted by Mr. Sunderhauf. At best, the conflicting declarations merely show that there is a disputed issue of fact, and do not in any way show that Plaintiff's claims were unwarranted.[6]

### c) Plaintiff has actively prosecuted this case

Defendant next alleges that Rule 11 sanctions are appropriate because Plaintiff has only served a "small handful of written discovery in late August 2015" and as a result, "Plaintiff never had any intention of prosecuting this case." Defendant's allegation is an outright falsehood.

As clearly set forth in Plaintiff TMM Data, LLC's Motion to Amend Case Management Order, filed August 31, 2015 [Dkt. No. 34], which was granted by the Court on September 2, 2015 [Dkt. No. 41], although Plaintiff filed its Complaint on October 28, 2014 [Dkt. No. 1], Defendant did not file his Answer until August 17, 2015 [Dkt. No. 32], due to the pendency of Defendant's Rule 12 Motion to Dismiss. [Dkt. No. 19.] While Defendant's Rule 12 Motion to Dismiss was pending, Plaintiff provided full and complete responses to interrogatories served by Defendant, and produced nearly 400 pages of documentation pursuant to Defendant's Document Requests. [Second Barlow Decl., ¶¶ 3-5] Plaintiff also produced Mr. Bob Selfridge, Plaintiff's founder and Chief Operating Officer for deposition on June 30, 2015. [Dkt. No. 55-4.] Plaintiff further prepared and filed a

---

[5] Mr. Prunty further confirms that he told counsel for Defendant all of these details in a telephone conversation in early November 2015. [Prunty Decl., ¶ 21.]

[6] Defendant submitted the Declaration of Ashish Braganza in connection with Defendant's Motions, but he does not testify in that declaration that he did not make the slanderous statements in question. Instead, he makes only the conclusory statement that "[a]t no time have I engaged in any unlawful conduct towards TMM Data or its co-owners individually, including as specifically alleged in Paragraphs 15 and 17 of the Complaint." [Dkt. No. 60-2 ¶ 2.] His disavowal of only "unlawful conduct" leaves open the possibility that he made the statements in Paragraphs 15 and 17 of the Complaint while relying on an argument that those statements were not false. In any event, it was permissible for Plaintiff to rely in good faith on Mr. Prunty's testimony even if it has now been controverted by Mr. Braganza.

21

motion to extend the dates of the Court's Case Management Order [Dkt. No. 34], prepared and filed a motion for leave to file an Amended Complaint [Dkt. No. 42], prepared and filed a reply to Defendant's opposition thereto, [Dkt. No. 51], and sought to settle the case.

Defendant misrepresents the state of discovery undertaken by Plaintiff. It was not until Defendant filed his Answer that TMM Data had notice of Defendant's defenses to the allegations of the Complaint and could practically proceed with discovery. Ten days thereafter, on August 27, 2015, Plaintiff served written discovery on Defendant, including interrogatories and requests for production. [*See* Barlow Decl., Dkt. No. 50, ¶ 5.] Defendant's responses to the interrogatories were wholly deficient and completely evasive, and Defendant produced a mere three pages of documentation in response to Plaintiff's document requests. [Barlow Decl., Dkt. 50, ¶ 6, Ex. C.] On October 23, 2015, Plaintiff's counsel sent a letter to counsel for Defendant explaining that Defendant's discovery responses were wholly deficient, identifying the deficiencies in Defendant's discovery responses, and requesting that Defendant cure those deficiencies. [Barlow Decl., Dkt. 50, ¶ 6, Ex. C.] Defendant's refusal to respond to Plaintiff's discovery requests was detailed in Plaintiff's motion to dismiss and was left completely unrebutted by Defendant's response. [Dkt. No. 48, ¶¶ 23, 27-28, 31; Dkt. No. 61; Dkt. No. 63, p.5.] Plaintiff also prepared subpoenas for Mr. Sunderhauf, Numeric Analytics, and Lenovo, and provided a copy of those subpoenas to Defendant. [Dkt. 63-3.] However, it has become apparent to Plaintiff that such discovery will be an expensive endeavor, particularly in light of Defendant's refusal to appropriately respond to Plaintiff's discovery requests and the necessity of a motion to compel in order to force Defendant to do so. [Barlow Decl., Dkt. No. 50, ¶ 6 & Exhs. A-D.][7]

---

[7] This conclusion is bolstered by Defendant's counsel's history of engaging in discovery abuses. *See Moore v. Dan Holdings*, 1:12cv503, Dkt. 21 (M.D.N.C. Oct. 28, 2012) (wherein Mr. Sanservino, counsel for Defendant, was cautioned by the Court to "behave cooperatively and courteously in connection with discovery" and to avoid "any further violation of the spirit and purpose of the discovery rules") (attached hereto as Exhibit A).

d)     **Plaintiff was justified in continuing this action in the face of declarations from Mr. Sunderhauf and Mr. Sanders**

Defendant next argues that Plaintiff's claims are meritless and frivolous in light of the declarations of Mr. Sunderhauf and Mr. Sanders. However, at most, the Sunderhauf Declaration and Sanders Declaration merely show that there is conflicting evidence about Plaintiff's claims. Conflicting evidence does not cause Plaintiff's claims to be meritless. The Sunderhauf Declaration is controverted by the testimony of Mr. Prunty, and the Sanders Declaration—depending on what it really means—may be controverted by the deposition testimony of Mr. Selfridge. The Sanders Declaration is likely not conflicting evidence at all because all it says is that "to the extent Mr. Selfridge testified" that Mr. Sanders "previously advised [Mr. Selfridge] that Mr. Braganza made false statements to Comcast about TMM Data," "his testimony is not accurate." [Dkt. No 55-6, ¶ 6.] Mr. Sanders' declaration likely means that he only related Mr. Braganza's statements about TMM Data to Mr. Selfridge and that he did not further tell Mr. Selfridge that Mr. Braganza's statements to Mr. Sanders about TMM Data were "false." This would be completely consistent with the deposition testimony of Mr. Selfridge, who was able to conclude on his own that such statements were false.

Importantly, neither Mr. Sunderhauf nor Mr. Sanders have yet been deposed in the action, although it is clear that Plaintiff intended to take the deposition of Mr. Sunderhauf, as evidenced by the subpoena prepared for and then served on Mr. Sunderhauf. [Dkt. No. 63-3; Dkt. No. 60 p.10 n.3.]

e)     **Plaintiff did not "belatedly abandon its claims"**

Finally, Defendant seemingly argues that Plaintiff should be sanctioned for rejecting Defendant's January 15, 2015 settlement offer and by moving to voluntarily dismiss the case a year later when Defendant would not agree to important provisions in conjunction with the Term Sheet executed by the parties on November 11, 2015. [Second Walsh Decl., ¶ 4.] First, Defendant's January 15, 2015 settlement offer was not "reasonable," as Defendant would have this Court believe.

23

A simple perusal of the settlement offer shows that it did **not** contain "mutual general releases," only a release by Plaintiff in favor of Defendant [Dkt. No. 60-4 at ¶ 4], and the so-called "non-disparagement provisions" in the settlement offer only precluded "false public statement[s]," not "false private statements" like the ones that had given rise to this lawsuit in the first place. [Dkt. No. 60-4 at ¶ 7.] Therefore, the settlement offer was not reasonable, and Plaintiff told Defendant just that in an email [Dkt. No. 63-4].[8]

Additionally, Defendant only tells part of the story surrounding the November 11, 2015 term sheet and subsequent settlement negotiations. As detailed above and in Plaintiff TMM Data, LLC's Memorandum of Law in Support of Its Motion to Dismiss with Prejudice, filed November 23, 2015 [Dkt. No. 48], on November 10, 2015, counsel for TMM Data reached out to counsel for Defendant to see if a settlement in the case could be reached. [Barlow Decl., Dkt. No. 50 at ¶ 7.] After several hours of discussion, in the late evening hours of November 10, 2015 or the early morning hours of November 11, 2015, the parties executed a term sheet which contemplated that the parties would negotiate a formal settlement agreement with additional terms. [Barlow Decl., Dkt. No. 50 at ¶ 7; Walsh Decl., Dkt. No. 49 at ¶ 17.] Counsel for Plaintiff provided a first draft of the formal settlement agreement to counsel for Defendant, but after counsel exchanged multiple drafts with one another, it became clear that Defendant would not agree to an important provision. [Walsh Decl., Dkt. No. 49 at ¶ 17; Second Walsh Decl., ¶ 4.] Given that settlement discussions failed, Plaintiff determined that continuing to spend money on attorney fees in this action in order to vindicate its rights no longer made economic sense. [Walsh Decl., Dkt. No. 49 at ¶ 18; Second Walsh Decl., ¶ 4.]

Based on Defendant's failure to respond properly to discovery, Plaintiff would likely need to file a motion to compel Defendant to respond to Plaintiff's written discovery requests, would likely

---

[8] Further, shortly after the filing of this lawsuit, Plaintiff offered to dismiss the lawsuit against Defendant if he would agree to stop disparaging Plaintiff, but that settlement offer was refused by Defendant. [Walsh Decl., Dkt. No. 49, ¶ 16.] Defendant offers no explanation for why it was reasonable for *him* to insist on continuing the lawsuit in the face of *this* settlement offer, yet it was unreasonable for Plaintiff to reject the much more unfavorable terms of the January 15, 2015 settlement offer.

need to seek documents from Mr. Sunderhauf, Lenovo, and Numeric Analytics, would likely need to take the depositions of at least Defendant and Sunderhauf, and would likely need to present all of the evidence gathered at trial, at considerable additional expense to Plaintiff, indeed to both parties. [Barlow Decl., Dkt. No. 50 at ¶ 9; Dkt. No. 63-2.] Plaintiff concluded that it did not make economic sense to continue pursuit of vindication of its rights, and therefore decided to dismiss the case with prejudice. [Walsh Decl., Dkt. No. 49 at ¶ 18; Second Walsh Decl., ¶ 4.]

Defendant provides no authority for the proposition that a voluntary dismissal by a plaintiff of its claims is somehow evidence that the claims were brought for an improper purpose, were frivolous, or were unsupported by law or fact, as required for sanctions under Rule 11. Indeed, the evidence in this action, as recited above, demonstrates that none of the enumerated conduct that is sanctionable under Rule 11 is present in this case. As such, dismissal of Defendant's Rule 11 Motion is proper.

### B.     Defendant Is Not Entitled to Attorney's Fees Under N.C. Gen. Stat. § 75-16.1

Defendant argues that he is entitled to his attorney's fees as the prevailing party under the North Carolina Unfair and Deceptive Trade Practices Act, ("UDTPA") because Plaintiff's claim under the Act was "frivolous and/or malicious." Defendant's contention is without merit.

N.C.G.S. § 75-16.1 states:

In any suit instituted by a person who alleges that the defendant violated G.S. 75-1.1, the presiding judge may, in his discretion, allow a reasonable attorney fee to the duly licensed attorney representing the prevailing party, such attorney fee to be taxed as a finding by the presiding judge that:

> (1) The party charged with the violation has willfully engaged in the act or practice, and there was an unwarranted refusal by such party to fully resolve the matter which constitutes the basis of such suit; or

> (2) The party instituting the action knew, or should have known, the action was frivolous and malicious.

N.C.G.S. § 75-16.1 (2013) (emphasis added). Defendant relies on subsection (2).

"A claim is frivolous if a proponent can present no rational argument based upon the evidence or law in support of [it]. A claim is malicious if it is wrongful and done intentionally without just cause or excuse or as a result of ill will." *McKinnon v. CV Indus., Inc*., 228 N.C. App. 190, 199 (2013); *Blyth v. McCrary*, 184 N.C. App. 654, 663 n.5 (2007). A party "should know" that a claim is frivolous and malicious where he or she can put forward no facts to support it. *See Castle McCulloch, Inc. v. Freedman*, 169 N.C. App. 497, 504 (2005).

In the instant case, as demonstrated above, Plaintiff's claims were rationally based on evidence and law. This includes Plaintiff's claim that Defendant violated the North Carolina Unfair and Deceptive Trade Practices Act. Plaintiff's UDTPA claim, as asserted in the Amended Complaint, sets forth facts which support the elements of the claim. [Dkt. No. 43-1, ¶¶ 33-42.] Further, as demonstrated above, Defendant offers no evidence (other than naked assumption and conjecture) that Plaintiff's UDTPA claim was frivolous or malicious, let alone that Plaintiff should have known that it was. In fact, no evidence exists to counter Plaintiff's assertion that its claims were brought in order to vindicate its rights, which cannot be termed frivolous or malicious.

In its Order dated July 31, 2015 [Dkt. No. 31], the Court dismissed Plaintiff's claim under the UDTPA *without prejudice*, finding that Plaintiff failed to "allege actual injury" in support of its claim. [Dkt. No. 31 at 12.] Importantly, the Court did not find that Plaintiff's UDTPA claim was entirely without merit, or was being brought maliciously or was frivolous. And after the Court's decision, Plaintiff moved in good faith to file an amended complaint to cure the defects identified by the Court in its original complaint. [Dkt. Nos. 42, 43, 51.] There has been no showing that Plaintiff's assertion of its UDTPA claim was "frivolous and malicious," let alone that Plaintiff knew or should have known that it was.

### C. Defendant Is Not Entitled to His Attorney's Fees, Costs and Expenses Pursuant to 28 U.S.C. § 1927

Defendant also asserts that he is entitled to an award of his attorney's fees and expenses pursuant to 28 U.S.C. § 1927. However, the plain text of the statute makes clear that Defendant has no such entitlement. 28 U.S.C. § 1927 reads:

> Any attorney or other person admitted to conduct cases in any court of the United States or any Territory thereof who so multiplies the proceedings in any case unreasonably and vexatiously may be required by the court to satisfy personally the excess costs, expenses, and attorneys' fees reasonably incurred because of such conduct.

Sanctions under § 1927 require a finding of bad faith on the part of an attorney. *See EEOC v. Great Steaks, Inc.*, 667 F.3d 510, 522 (4th Cir. 2012) (citing *Chaudhry v. Gallerizzo*, 174 F.3d 394, 411 n.14 (4th Cir. 1999); *Brubaker v. City of Richmond*, 943 F.2d 1363, 1382 n.25 (4th Cir. 1991)). Consideration of sanctions under § 1927 may turn on many of the same factors as Rule 11 sanctions. *See Blue v. U.S. Dep't of Army,* 914 F.2d 525, 546 n. 3 (4th Cir. 1990). The United States Supreme Court has recognized that § 1927 "does not distinguish between winners and losers, or between plaintiffs and defendants." *Roadway Express, Inc. v. Piper,* 447 U.S. 752, 762 (1980). Moreover, "[t]he statute is indifferent to the equities of a dispute and to the values advanced by the substantive law." *Id.* Instead, the statute is "concerned only with limiting the abuse of court processes." *Id.* For this reason, a court considering the propriety of a § 1927 award must focus "on the conduct of the litigation and not on its merits."*DeBauche v. Trani,* 191 F.3d 499, 511 (4th Cir.1999).

Defendant argues that "Plainitiff's attorneys never should have filed the instant lawsuit, much less kept the case on the Court's docket … for over a year." However, as Defendant has consistently done throughout his Motions, Defendant fails to tell the whole story. A review of the procedural history of this case belies Defendant's allegations, as detailed above in the section entitled "Statement of Relevant Facts." That simple review demonstrates Plaintiff's diligence in attempting to both prosecute and settle this case.

It is clear that Plaintiff has not abused the court process or sought to multiply the proceedings frivolously or vexatiously. Rather, Plaintiff has diligently pursued a vindication of its legal rights until it no longer made economic sense to do so. Importantly, Defendant has not identified any conduct on the part of Plaintiff's attorneys that would demonstrate bad faith. As such, Plaintiff's claim for sanctions pursuant to § 1927 must be denied.

### D. Defendants are not entitled to attorney's fees pursuant to the Court's inherent authority

The Court has inherent authority to sanction litigation conduct "when a party has acted in bad faith, vexatiously, wantonly, or for oppressive reasons." *See Chambers v. NASCO, Inc*., 501 U.S. 32, 44 (1991). "A court's inherent authority extends only to remedy abuses of the judicial process." *Id*. at 32. "Courts must exercise their inherent powers with restraint and discretion." *Beach Mart, Inc. v. L & L Wings, Inc*., 302 F.R.D. 396 (E.D.N.C. 2014) (internal citation and quotation marks omitted).

For reasons discussed *supra*, the Court should not award defendant's attorney's fees pursuant to the Court's inherent authority. There is no evidence that Plaintiff acted "in bad faith, vexatiously, wantonly, or for oppressive reasons." As shown herein, Plaintiff's demonstrable purpose in bringing the litigation was to vindicate its rights. Any possible effects of its vindication do not translate to Plaintiff acting improperly in bringing and litigating its suit.

### V. Conclusion

Defendant's Rule 11 Motion is unfounded because Defendant failed to provide the proper notice as clearly set forth in Rule 11, and because Defendant's allegations that Plaintiff's claims were made without a reasonable inquiry, or were brought for an improper purpose, were frivolous, or lacked legal and evidentiary support are entirely based on incomplete and grossly misleading factual assertions. Further, Defendant's claim for attorney's fees under N.C.G.S. § 75-16.1 of the UDTPA fails because Defendant has offered no evidence that Plaintiff's UDTPA claim was frivolous and malicious, let alone that Plaintiff should have known that it was. Finally, Defendant's claim for

sanctions under 28 U.S.C. § 1927 likewise fails because Defendant has offered no evidence to show that Plaintiff's attorneys have acted in bad faith to unreasonably and vexatiously multiply the proceedings before this court.

As such, Defendant's Rule 11 Motion [Dkt. No. 58] and Defendant's Fee Motion [Dkt. No. 59] should both be denied in their entirety, and Defendant should not be awarded any of the requested relief.

DATED this 11th day of January, 2016.

Respectfully submitted.

By     /s/ Matthew A. Barlow

**WORKMAN | NYDEGGER**
Matthew A. Barlow
Utah State Bar No. 9596
mbarlow@wnlaw.com
David R. Todd
Utah State Bar No. 8004
dtodd@wnlaw.com
60 East South Temple, Suite 1000
Salt Lake City, UT 84111
Telephone: (801) 533-9800
Facsimile: (801) 328-1707
COUNSEL FOR PLAINTIFF

**POYNER SPRUILL LLP**
Eric P. Stevens
N.C. State Bar No. 17609
estevens@poynerspruill.com
P.O. Box 1801
Raleigh, NC 27602-1801
Telephone: 919.783.1017
Facsimile: 919.783.1075
LOCAL CIVIL RULE 83.1 COUNSEL

## CERTIFICATE OF SERVICE

I hereby certify that on January 11, 2016, I electronically filed the foregoing document with the Clerk of the Court using the CM/ECF system which will send notification of such filing to the following:

**THE NOBLE LAW FIRM, PLLC**

Nicholas J. Sanservino, Jr. (N.C. Bar No. 36557)
Laura L. Noble (N.C. Bar No. 38691)
Donald C. Davis (N.C. Bar No. 38120)
308 W. Rosemary Street, Suite 303
Chapel Hill, N.C. 27516
Telephone: (919) 251-6008
Facsimile: (919) 869-2079
nick@thenoblelaw.com
lnoble@thenoblelaw.com
ddavis@thenoblelaw.com
*Attorneys for Defendant*

**BROWN, CRUMP, VANORE & TIERENY, LLP**

Andrew A. Vanore, III (N.C. Bar No. 13139)
P.O. Box 1729
Raleigh, N.C. 27602
Telephone: (919) 835-0909
Facsimile: (919) 835-0915
dvanore@bcvtlaw.com
*Attorneys for Defendant*

/s/ Matthew A. Barlow