IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF NORTH CAROLINA
WESTERN DIVISION

NO. 5:14-CV-729-FL

| | | |
|---|---|---|
| TMM DATA, LLC, | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| v. | ) | ORDER |
| | ) | |
| ASHISH BRAGANZA, | ) | |
| | ) | |
| Defendant. | ) | |

This matter is before the court on plaintiff's motion for leave to amend complaint (DE 42), for voluntary dismissal with prejudice (DE 47), and to seal (DE 68, 74). Also before the court are defendant's motion for extension of time (DE 46), for sanctions under Federal Rule of Civil Procedure 11 (DE 58), and for attorneys' fees, costs, expenses, or other relief (DE 59). The issues raised have been fully briefed and are ripe for adjudication. For the following reasons, plaintiff's motions to dismiss and to seal are granted; defendant's motions for sanctions, fees, costs, expenses or other relief are denied; and the remaining motions are dismissed as moot.

## BACKGROUND

Plaintiff, a Pennsylvania limited liability company that markets and sells a data management software platform, filed this action on October 28, 2014, alleging common law claims for tortious interference with contractual relations and slander, as well as a statutory claim for violation of North Carolina's Unfair and Deceptive Trade Practices Act ("UDTPA"), N.C. Gen. Stat. §§ 75–1.1 to 75-35. Plaintiff seeks compensatory damages, punitive damages, and injunctive relief against defendant, who is a North Carolina resident and employee of non-party Lenovo, Inc. ("Lenovo").

Plaintiff's claims arise out of defendant's alleged disparagement of plaintiff and disruption of plaintiff's business relationship with Numeric Analytics ("Numeric"), "a marketing and analytics consulting firm" based in Denver, Colorado, also a non-party to this action. (Compl. ¶ 13).

According to the complaint, in 2012, plaintiff and Lenovo entered into a contract to license plaintiff's platform and software development services to Lenovo. Defendant served as the main point of contact between Lenovo and plaintiff. On July 1, 2014, plaintiff and Lenovo mutually terminated their contractual relationship. That same day, plaintiff entered into a "business and contractual" relationship with Numeric, whereby the two "would partner together to provide business solutions to consumers in a wide array of industries." (Id.).

Between late September and early October, 2014, Mr. Joseph Prunty, senior account director for Numeric, had multiple discussions with Mr. Chris Walsh, co-founder of plaintiff, "to discuss the relationship between Numeric [] and [p]laintiff." (Id. ¶ 14). In one such discussion, Mr. Prunty stated that defendant had contacted Mr. Jim Sunderhauf, director of business services at Numeric, to "ask why Numeric [] was working with plaintiff," and to "encourag[e] Numeric [] to sever its professional relationships with plaintiff." (Id. ¶¶ 15, 17).

According to Mr. Prunty, defendant made the following statements to Mr. Sunderhauf:

(1) Plaintiff had stolen $300,000 from Lenovo,
(2) Plaintiff did not perform services under its contract with Lenovo,
(3) Plaintiff's technology was owned by Lenovo and had been stolen from Lenovo,
(4) Plaintiff's data management software platform did not work as advertised,
(5) Mr. Walsh was a 'con man' who was not to be trusted, and
(6) Lenovo was currently suing Plaintiff over these issues.

(Id. ¶ 15). According to the complaint, these statements were false and intended by defendant to harm plaintiff in its business and its reputation. Numeric "has threatened to end its business relationship with [p]laintiff" as a result of defendant's statements to Mr. Sunderhauf. (Id. ¶19).

2

On February 6, 2015, defendant moved to dismiss the complaint for failure to state a claim, for lack of subject matter jurisdiction, and for failure to join a necessary party. While briefing was ongoing, the parties filed a joint report and plan, under Federal Rule of Civil Procedure 26(f), and the court entered a case management order setting a discovery deadline of November 20, 2015.

On July 31, 2015, the court denied in part and granted in part defendant's motion to dismiss. As an initial matter, the court determined that dismissal on the basis of lack of subject matter jurisdiction was not warranted, where plaintiff alleged sufficient amount in controversy for purposes of diversity jurisdiction. The court dismissed without prejudice plaintiff's tortious interference, slander per quod, and unfair trade practices claims, where plaintiff failed to allege actual injury. By contrast, the court allowed the slander per se claim to proceed, where damages are presumed as a matter of law. Finally, the court denied without prejudice defendant's motion to dismiss for failure to join necessary party, where defendant had not demonstrated the need to join non-party Lenovo.

On August 17, 2015, defendant filed an answer to the complaint, denying the allegations underlying the remaining claim and asserting affirmative defenses. On August 24, 2015, defendant moved for an extension of time in which to joint additional parties and otherwise amend the pleadings, from August 24, 2015, to October 15, 2015. In addition, on August 31, 2015, plaintiff moved for a 90 day extension of deadlines in the case management order, including February 18, 2016, as the date for completion of discovery, which extension defendant opposed. On September 2, 2015, the court granted both parties' motions for extension, with additional allowance for defendant until November 23, 2015, to move to join additional parties or amend the pleadings.

On October 13, 2015, plaintiff filed the instant motion for leave to file amended complaint, with a proposed amended complaint, asserting additional allegations related to damages and an

3

additional claim based upon tortious interference with prospective economic advantage. On November 23, 2015, the date briefing on the motion was completed, plaintiff filed the instant motion to dismiss the action with prejudice, pursuant to Federal Rule of Civil Procedure 41(a)(2). Plaintiff further contended that if the motion to dismiss is granted, then its motion to amend complaint will be moot.

On that same date, defendant filed the instant motion to extend the time to file a motion for leave to join additional parties and/or to amend the pleadings through December 11, 2015. The next day, on November 24, 2015, plaintiff filed an emergency motion for protective order and to stay discovery, including deposition of plaintiff, which defendant did not oppose, provided allowance of the motion was "without prejudice to [defendant's] right to request that the deposition be re-scheduled after the Court decides Plaintiff's pending motion to dismiss and without prejudice to [defendant's] right to seek fees, costs and other damages associated with [plaintiff's deposition] . . . and to seek additional, appropriate discovery after the Court decides Plaintiff's pending motion to dismiss." (DE 55 at 6-7).

On November 24, 2015, the court granted the motion for stay, "without prejudice to defendant's rights to assert fully arguments in opposition to plaintiff's motion to dismiss, and to seek additional appropriate discovery and relief after the court decides plaintiff's motion to dismiss." (DE 57 at 1-2).

Defendant filed the instant motions for sanctions and attorneys' fees on December 17, 2015, and on the same date responded to plaintiff's motion for voluntary dismissal. In response to plaintiff's motion for voluntary dismissal, defendant states that the court should grant the motion

4

Case 5:14-cv-00729-FL   Document 77   Filed 03/28/16   Page 4 of 13

provided it does not preclude defendant "from seeking sanctions, attorneys' fees and the like." (DE 61 at 12).

## DISCUSSION

A.   Motion for Voluntary Dismissal

Federal Rule of Civil Procedure 41(a)(2) provides that "an action may be dismissed at the plaintiff's request only by court order, on terms that the court considers proper," when dismissal is sought after an opposing party has served an answer or motion for summary judgment. Fed. R. Civ. P. 41(a)(2). "The purpose of Rule 41(a)(2) is freely to allow voluntary dismissals unless the parties will be unfairly prejudiced." Davis v. USX Corp., 819 F.2d 1270, 1273 (4th Cir. 1987). Prejudice to a defendant may serve to defeat a motion for voluntary dismissal taken "without prejudice." Id. By contrast, "a voluntary dismissal with prejudice acts as an adjudication on the merits," thus usually precluding any legal prejudice. Bioxy, Inc. v. Birko Corp., 935 F. Supp. 737, 740 (E.D.N.C. 1996) (emphasis added). "Accordingly, a motion for voluntary dismissal with prejudice should be granted absent evidence of collusion, an imminent decision on the merits, or other extraordinary circumstances." Id.

Here, plaintiff seeks dismissal with prejudice and there is no imminent decision on the merits. Defendant does not oppose the dismissal, provided he is not precluded from seeking "sanctions, attorneys' fees and the like." (DE 61 at 12). As a matter of law, a voluntary dismissal does not preclude a defendant from seeking sanctions, attorneys' fees, or other relief based upon conduct of counsel in filing and prosecuting an action. See Cooter & Gell v. Hartmarx Corp., 496 U.S. 384, 393 (1990); In re Kunstler, 914 F.2d 505, 512-13 (4th Cir. 1990). Accordingly, finding

5

no prejudice or extraordinary circumstances precluding dismissal with prejudice, the court grants the motion.

In light of the voluntary dismissal with prejudice, plaintiff's motion to amend filed in advance of such dismissal must be denied as moot. Likewise, the court finds moot defendant's motion for extension of time filed on the same date as plaintiff's motion for voluntary dismissal. In that motion for extension, defendant asserts that he "believes he may have his own causes of action against Plaintiff, which may be brought in this action as counterclaims and/or in a separate action." (DE 46). Defendant, however, does not have any counterclaims pending, not has defendant sought leave to amend the answer to add any counterclaims. Although Rule 41(a)(2) expressly precludes dismissal of any "pending" counterclaim, it does not provide a basis for allowing a defendant to extend time to bring any previously-unasserted counterclaims. Fed. R. Civ. P. 41(a)(2); see 9 Charles A. Wright & Arthur A. Miller, Federal Practice and Procedure § 2365 (3d ed. 2008). Defendant may still seek to bring claims in a separate action against plaintiff, but his ability to do so in the present action is extinguished by plaintiff's voluntary dismissal. Accordingly, defendant's motion for extension of time is denied.

In sum, the court grants plaintiff's motion for voluntary dismissal and denies as moot plaintiff's motion to amend and defendant's motion for extension.

B.   Motions for Sanctions, Fees, and Other Relief

Defendant moves for sanctions, attorney's fees, costs, and other appropriate relief pursuant to Federal Rule of Civil Procedure 11, the UDTPA, 28 U.S.C. § 1927, and the court's inherent power. Because Rule 11 requires a motion under that rule to be "made separately from any other motion," defendant has filed two separate motions with the court, but supported both with one

6

memorandum premised upon common facts and arguments. The court likewise considers together the issues raised by the two motions.

Rule 11 requires an attorney to conduct a reasonable inquiry before filing a pleading to ensure that:

> (1) it is not being presented for any improper purpose, such as to harass, cause unnecessary delay, or needlessly increase the cost of litigation;
>
> (2) the claims, defenses, and other legal contentions are warranted by existing law or by a nonfrivolous argument for extending, modifying, or reversing existing law or for establishing new law; [and]
>
> (3) the factual contentions have evidentiary support or, if specifically so identified, will likely have evidentiary support after a reasonable opportunity for further investigation or discovery[.]

Fed. R. Civ. P. 11(b). The rule authorizes the court to impose sanctions, including attorneys fees, if an attorney fails to comply with the rule. Fed. R. Civ. P. 11(c).

The UDTPA provides that a prevailing defendant may recover its attorney's fees if the plaintiff "knew, or should have known, the action was frivolous and malicious." N.C. Gen. Stat. § 75-16.1. Similarly, 28 U.S.C. § 1927 provides that "[a]ny attorney . . . who so multiplies the proceedings in any case unreasonably and vexatiously may be required by the court to satisfy personally the excess costs, expenses, and attorneys' fees reasonably incurred because of such conduct."

Authorities for imposing sanctions upon attorneys for improper conduct "share the common goal of the efficient litigation of meritorious suits and the deterrence of suits so patently meritless that their pursuit constitutes an abuse of the judicial system." Blue v. U.S. Dept. of Army, 914 F.2d 525, 533 (4th Cir. 1990). Under the various theories for imposing sanctions, a district court may "base[] its award of sanctions not simply on the filing of a frivolous suit but also on the prolonged

7

maintenance of a frivolous suit" after discovery has been conducted. Id. at 537. "[A] complaint containing allegations unsupported by any information obtained prior to filing, or allegations based on information which minimal factual inquiry would disprove, will subject the author to sanctions." In re Kunstler, 914 F.2d 505, 516 (4th Cir. 1990).

For example, in Blue, the district court "found plaintiffs' charges so lacking in credible supporting evidence that it had to conclude that the suits either were initiated in bad faith or were maintained so long after it became apparent that they were baseless that a finding of bad faith was required." Id. at 539. "In the district court's view, the only evidence ever advanced by plaintiffs on their claims were their own unsubstantiated, self-serving, contradictory, and inconsistent claims of discrimination." Id. (internal quotations omitted). In Kunstler, the district court "noted numerous misstatements of fact," and "errors pervad[ing] the complaint . . . concern[ing] information which either was or should have been known" to the filing attorneys. 914 F.2d at 514.

Defendant asserts that attorney's fees or other sanctions are warranted on several grounds. The court considers first defendant's contention that plaintiff's pre-suit inquiry was insufficient because plaintiff's core allegations about defamatory statements are uncorroborated and because plaintiff has not provided any evidence to support its claim to damages. These grounds are unavailing. With respect to corroboration, plaintiff had the account of Mr. Prunty, who was not himself affiliated with plaintiff in any respect, and who did not have any apparent self-interest in the outcome. Mr. Prunty has stood by his account, even as it may have led to his termination from Numeric. (See Prunty Decl. (DE 66) ¶¶ 8-15, 17-19). In this manner, this case stands in contrast to Blue, for example where the plaintiffs were individuals who advanced allegations in their own interest, which were "unsubstantiated" and "self-serving." 914 F.2d at 539.

8

Defendant asserts that plaintiff's counsel should have contacted "Mr. Sunderhauf or Mr. Braganza to corroborate Plaintiff's purported claims before filing the instant lawsuit," and that they have provided contradictory testimony. (DE 60 at 14). The existence of contradictory witness statements, however, does not establish that the lawsuit was frivolous, but rather that the lawsuit could turn on issues of credibility. On that front, both Mr. Sunderhauf and defendant both had interests in favor of the defendant, through their mutual business relationship. (See Sunderhauf Decl. (DE 66-1) ¶3). It is also noteworthy that Mr. Sunderhauf admits having had a conversation with defendant, and he admits the conversation further concerned plaintiff's relationship with Lenovo, while disputing the details of that conversation. (Id. ¶ 5). Where he contents of that conversation reasonably are in dispute, there is no basis to find plaintiff's pre-suit inquiry inadequate.[1]

With respect to evidentiary support for damages, this is undoubtedly a weaker point in plaintiff's claim. Plaintiff's claim for damages, however, is not so plainly lacking in factual and legal support to be deemed frivolous. The court's assessment as to this issue is guided by the court's own rulings and plaintiff's conduct in response thereto. In its July 31, 2015, order, for example, the court determined that a sufficient basis existed for diversity jurisdiction, including on the basis of a suggestion in Mr. Walsh's declaration that plaintiff's damages surpass $100,000.00. (July 31, 2015, order at 6). By contrast, the court determined that the damages allegations in the complaint were insufficient to state slander and UDTPA claims dependent upon a showing of damages. (Id. at 10-13).

---

[1] In the same vein, defendant points to a statement by Mr. Joseph Sanders, a Comcast employee, denying that defendant made similar false statements to Mr. Sanders, and that testimony by Mr. Bob Selfridge, one of plaintiff's co-owners to the contrary "is not accurate." (Sanders Decl. (DE 55-6) ¶ 6). While supportive of defendant's case, this evidence is not of the type sufficient to support an award of sanctions against plaintiff.

In its proposed amended complaint, plaintiff sought to add allegations, consistent with Mr. Walsh's declaration, that plaintiff lost expected revenue surpassing $100,000.00. (See DE 43-2 at 4). Defendant suggests that these new allegations would not have been sufficient to resurrect plaintiff's dismissed claims. Nevertheless, the court finds the question of sufficiency of the proposed amended allegations regarding damages to be reasonably open to debate, thus precluding a determination that plaintiff's position with respect to damages is frivolous.

Defendant also argues that plaintiff's failure to serve discovery requests until late August 2015, demonstrates that "[p]laintiff never had any intention of prosecuting this case," itself providing a ground for sanctions. (DE 60 at 50). This court has already considered, however, defendant's criticism of plaintiff's approach to discovery, as well as plaintiff's justification thereof, in allowing plaintiff's opposed motion to extend deadlines in the court's case management order on September 2, 2015. (See DE 41 at 1). Similar considerations now guide the court's determination that plaintiff's approach to discovery was sufficiently justified to overcome an award of sanctions.[2]

Finally, defendant contends that plaintiff had an improper purpose in filing the lawsuit, which was to intimidate defendant and attempt to negatively impact his employment with Lenovo. The Fourth Circuit has suggested "that a district court should consider the first two prongs of Rule 11" – whether or not a pleading has a foundation in fact or is well grounded in law – "before making a determination of improper purpose." Kunstler, 914 F.2d at 518. Moreover, the Fourth Circuit has

---

[2] Defendant also notes that between August 2015 and November 2015, plaintiff failed to produce its corporate designee for a Rule 30(b)(6) deposition. To the extent defendant contends this is an additional ground for sanctions, defendant did not move properly for sanctions under Rule 37 for this conduct. See Fed. R. Civ. P. 11(d) (stating that Rule 11 is inapplicable to discovery disputes); Fed. R. Civ. P. 37(d) (providing procedures for addressing a party's failure to attend Rule 30(b)(6) deposition). To the extent defendant otherwise suggests it needs or needed to conduct this Rule 30(b)(6) deposition in order to support fully its motion for sanctions, the court finds that further discovery for purposes of a determination of sanctions is not warranted, in light of the court's assessment above of the legal and factual basis for the suit.

not had occasion to address the issue "whether a complaint which is well grounded in law and in fact can be sanctioned solely on the basis that it was filed for and improper purpose." Id.

Having rejected defendant's other grounds for sanctions, the court doubts that an asserted improper purpose, alone, could provide a basis for sanctions under the circumstances of this case. In any event, the court finds unsupported by the record defendant's assertion that plaintiff brought the suit for an improper purpose. Defendant contends improper purpose must be inferred from the fact that (1) plaintiff refused to withdraw the complaint even after being confronted with evidence wholly rebutting its claims, in the form of a declaration by Mr. Sunderhauf, and (2) plaintiff's co-owner sent an email to Lenovo management prior to filing of the suit outlining the basis for the suit.

As for plaintiff's refusal to withdraw the complaint, the court already addressed above the alleged contrary evidence cited by defendant. Refusal to withdraw the complaint in light of such evidence does not demonstrate an improper purpose in bringing suit. As for the email to Lenovo, the court finds the contents therein to be within the range of reasonable strategic communication at the commencement of a lawsuit, especially in light of the prior contractual relationship with Lenovo, as discussed in the email. (See DE 60-7 at 1-2). If, as the complaint alleges, defendant made false statements to Numeric regarding plaintiff's business, an email from plaintiff to defendant's employer upon filing suit is not itself evidence of an improper purpose in bringing suit.

In sum, defendant's motions for sanctions under Rule 11, and for fees, costs, expenses, or other relief under the UDTPA, 28 U.S.C. § 1927, or the court's inherent powers must be denied.[3]

---

[3] The court's decision on these motions does not preclude defendant from seeking taxation of costs, which are allowable under 28 U.S.C. § 1920.

C. Motions to Seal

Plaintiff moves to seal the Walsh Declaration, filed in support of its opposition to motion for sanctions. Plaintiff contends that the Walsh Declaration contains confidential business information, including business reasons and strategies regarding prosecution of the instant lawsuit. Plaintiff also moves to seal two exhibits filed in support of defendant's reply to its motion for sanctions, comprising deposition testimony of plaintiff's co-founder and portions of a draft settlement agreement that was the subject of negotiations between the parties. Plaintiff notes that the portions of the testimony produced were designated at the deposition as "Confidential – Attorneys' Eyes Only," and the draft settlement agreement is designated confidential.

Pursuant to the stipulated protective order, entered June 15, 2015, and upon consideration of the sensitive and confidential nature of the documents at issue, the court finds that the interest in protecting confidentiality in these documents outweighs the public interest in access, not here subject to a heightened First Amendment standard. See Stone v. Univ. of Md. Medical Sys. Corp., 855 F.2d 178, 180 (4th Cir. 1988). Therefore, upon good cause shown, the court grants the motions to seal.

**CONCLUSION**

Based on the foregoing, plaintiff's motion to dismiss with prejudice under Federal Rule of Civil Procedure 41(a)(2) (DE 47) is GRANTED and this action is hereby DISMISSED WITH PREJUDICE. Plaintiff's motions to seal (DE 68, 74) are GRANTED. Defendant's motion for sanctions under Federal Rule of Civil Procedure 11 (DE 58), and motion for attorneys' fees, costs, expenses, or other relief (DE 59) are DENIED. Plaintiff's motion for leave to amend complaint (DE

12

42) and defendant's motion for extension of time (DE 46) are DENIED AS MOOT. The clerk is DIRECTED to close this case.

    SO ORDERED, this the 28th day of March, 2016.

                                      LOUISE W. FLANAGAN
                                      United States District Judge